Ladan BAKHTARI, M.D., Appellant,

v.

ESTATE OF Paul Brent DUMAS, Cynthia Dumas, Individually, and as Representative for the Estate of Paul Brent Dumas, and as Next Friend of Madeline Dumas, and Kristin Dumas, Appellees.

No. 05–09–00200–CV.

Court of Appeals of Texas, Dallas.

June 29, 2010.

Bryan D. Pollard, Dallas, TX, for Appellant.

Eric D. Fein, Eric D. Fein, P.C. & Associates, Vickie S. Brandt, Dallas, TX, for Appellees.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

In this interlocutory appeal, appellant Ladan Bakhtari, M.D. appeals from an order denying her motion to dismiss health care liability claims brought against her by appellees. We affirm the trial court's order.

### BACKGROUND

Paul Brent Dumas was Bakhtari's patient before he committed suicide by overdosing on a mixture of drugs in October 2003. In their original petition filed November 29, 2005, appellees alleged that Bakhtari negligently prescribed the drug "Restoril/Temazepam" to Dumas "without proper evaluation, follow-up or precautions" and that this alleged negligence proximately caused Dumas's injury and death.

On March 28, 2006, 119 days after their original petition was filed, appellees served Bakhtari with reports prepared by Charles A. Kessler, M.D., and James O'Donnell, Pharm. D. Due to "an inadvertent clerical error," however, appellees did not serve Kessler's and O'Donnell's curricula vitae (CVs) with their reports, as required by section 74.351(a) of the civil practice and remedies code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009). Sixteen days later, on April 13, 2006, Bakhtari filed a motion to dismiss raising objections to the sufficiency of the reports, including that the reports were not accompanied by the required CVs. On May 11, 2006, the parties entered into a written "Rule 11 Agreement," in which Bakhtari agreed (1) not to oppose appellees' motion for leave to supplement the reports with the missing CVs, and (2) to withdraw her motion to dismiss based on the missing CVs; and appellees agreed to allow 21 days from the date the trial court signed the order granting the unopposed motion for leave for Bakhtari "to object to the qualifications of the experts based upon their curriculum vitae."[1] The order

---

1. Although section 74.351(a) does allow the parties to extend, by written agreement, a claimant's deadline for serving an expert report, it does not permit the parties or the trial court to extend a defendant's 21–day deadline to object to the sufficiency of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *see also Desai v. Garcia,* 09–06–00332–CV, 2006 WL 3627008, at *2 (Tex.App.-Beaumont Dec. 14, 2006, no pet.) (mem. op.) ("Section 74.351(a) does not provide a mechanism by which the trial court may grant the physician an extension of time to file objections to the sufficiency of the report."). In this case, the parties' agreement concerning Bakhtari's deadline is in accord with section 74.351(a) and did not impermissibly extend Bakhtari's deadline. The parties essentially agreed to extend the deadline for serving the CV component of the reports to the date of the trial

granting the unopposed motion for leave was signed by the trial court on May 18, 2006. As a result, Bakhtari's deadline to file and serve any objection was June 8, 2006. *See id.*

After appellees supplemented their reports with the experts' CVs on May 18, 2006, they did not serve any new or supplemental reports on Bakhtari. On October 31, 2008, Bakhtari filed "Supplemental Briefing" in support of her objections to appellees' reports. Appellees filed a response to Bakhtari's objections to the sufficiency of the reports in which, in addition to responding to the merits of Bakhtari's objections, appellees argued that Bakhtari "waived her objections to the expert reports" because she did not supplement her initial objections, or set a hearing on her objections, within 21 days of the date appellees supplemented their reports with the experts' CVs.[2] After a hearing, the trial court issued an order denying Bakhtari's motion to dismiss without specifying the basis for its ruling.

## ISSUES ON APPEAL

In multiple issues, Bakhtari argues that Kessler and O'Donnell are not qualified to render expert opinions in this case, and that their reports do not meet the requirements of chapter 74 of the civil practice and remedies code because they do not provide a fair summary of the experts' opinions on the applicable standards of

court's order granting the motion to supplement; and Bakhtari's 21–day deadline under section 74.351(a) was triggered on the date the order was signed. *See generally Pena v. Methodist Healthcare Sys. of San Antonio, Ltd.*, 220 S.W.3d 52, 54 (Tex.App.-San Antonio 2006, no pet.) (holding "twenty-one day period for a defendant health care provider to object to the sufficiency of an expert report is not triggered until the claimant has filed both the report and a curriculum vitae of each expert listed in the report, as required by section 74.351(a)").

care, breach, or causation. In response, appellees argue that Bakhtari waived all of her objections to the reports. Alternatively, appellees argue that Kessler and O'Donnell are qualified to render expert opinions in this case, and that their reports are sufficient to meet the requirements of chapter 74.

## APPLICABLE LAW

### Chapter 74 Expert Reports and Objections

Chapter 74 of the civil practice and remedies code requires a claimant pursuing a health care liability claim to serve one or more expert reports on each party no later than 120 days after the original petition is filed. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). A report is sufficient to meet the requirements of chapter 74 if it represents "an objective good faith effort to comply with the definition of an expert report." *See id.* § 75.351($l$). An "expert report" is defined as

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

2. In their response, appellees stated that Bakhtari "waited until January 30, 2009 to supplement her motion [to dismiss]." The appellate record, however, does not include a supplemental motion to dismiss filed on or around January 30, 2009. We assume appellees were referring to Bakhtari's supplemental briefing filed on October 31, 2008, which is also the date that Bakhtari's counsel indicated, during the hearing on her motion to dismiss, that she filed supplemental briefing.

*Id.* § 74.351(r)(6). If a report is timely served, a defendant "whose conduct is implicated in the report must serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* § 74.351(a).

## STANDARD OF REVIEW

We review a trial court's decision on a motion to dismiss a health care liability claim under the expert report provisions of chapter 74 for an abuse of discretion. *Cook v. Spears,* 275 S.W.3d 577, 580 (Tex. App.-Dallas 2008, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Id.* A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court might have decided it. *Baylor Univ. Med. Ctr. v. Biggs,* 237 S.W.3d 909, 916 (Tex.App.-Dallas 2007, pet. denied). However, a trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.*

## ANALYSIS OF WAIVER ARGUMENTS

Because appellees argue on appeal, as they did below, that Bakhtari waived all of her objections to the reports, we address that threshold issue first. *See Troeger v. Myklebust,* 274 S.W.3d 104, 108 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) ("As a threshold issue [ ] we must determine whether [the defendant's] challenges to the expert report have been waived."); *see also Williams v. Mora,* 264 S.W.3d 888, 890 (Tex.App.-Waco 2008, no pet.) (addressing waiver argument first).

## Can this Court consider the issue of waiver?

Bakhtari contends that this Court cannot consider appellees' waiver argument for two reasons: (1) the trial court's comments at the dismissal hearing demonstrate that it denied Bakhtari's motion to dismiss based on the merits of her objections to the reports, not on the basis that she waived her objections,[3] and (2) appellees did not file a notice of cross-appeal. We disagree.

First, a trial court's comments during a hearing do not constitute written findings and conclusions, and do not limit the grounds upon which an order can be upheld on appeal. *See Larry F. Smith, Inc. v. Weber Co.,* 110 S.W.3d 611, 615 (Tex.App.-Dallas 2003, pet. denied). Second, appellees do not seek to alter the trial court's order; it is Bakhtari who seeks to alter it. Consequently, appellees were not required to file a notice of cross-appeal. *See* Tex.R.App. P. 25.1(c) (party who seeks to alter trial court's judgment or order must file notice of appeal); *see also Desai v. Garcia,* 09–06–00332–CV, 2006 WL 3627008, at *2 (Tex.App.-Beaumont Dec. 14, 2006, no pet.) (mem. op.). As a result, we reject Bakhtari's argument that we cannot consider the threshold issue of whether she waived her objections to the reports.

## Did Bakhtari waive her objections?

Appellees argue that all of Bakhtari's objections are waived because "no objections were filed or set for hearing" before

**3.** More specifically, Bakhtari cites the following statement made by the trial court at the conclusion of the hearing on the motion to dismiss:

I'm not thrilled, to be bluntly honest, with Dr. Kessler's report. I do think that there are some issues with it; however, in light of the fact that y'all have—I think it states what it needs to state. I think it's borderline in some way, but I do think that everything that needs to be there is there in a fashion, so I am going to deny this motion.

her 21–day deadline under section 74.351(a) expired. In response, Bakhtari argues that none of her objections were waived for multiple reasons. We disagree with both sides and conclude that some of Bakhtari's objections were timely and not waived and some were untimely and were waived.

Appellees contend that Bakhtari filed "no objections" to the reports before her deadline under section 74.351(a) expired. But as appellees acknowledge in their statement of facts, and as the record demonstrates, Bakhtari did file objections to the sufficiency of the reports before her 21–day deadline expired. More specifically, in the motion to dismiss and initial objections that Bakhtari filed sixteen days after the reports were served, she specifically argued that Kessler is not qualified to offer an expert opinion in this case because Kessler does not practice medicine in the same community as Bakhtari, and his report does not demonstrate that he practices in a community similar to the community in which Bakhtari practices. Bakhtari also argued in her initial objections that Kessler's report is substantively deficient because it is conclusory with respect to the causal relationship between Bakhtari's alleged breach of the standard of care and Dumas's injuries and death.[4]

Bakhtari argued in her "supplemental briefing" that Kessler is not qualified to render an expert opinion in this case because he is "an internal medicine practi-tioner, not a forensic pathologist." She also argued that Kessler's report is speculative and conclusory with respect to his opinions about the applicable standard of care and how that standard was allegedly breached by Bakhtari. Bakhtari apparently contends that we should consider all of her objections, without regard to when they were raised. We disagree.

First, with respect to her qualification objections, Bakhtari argues that in *Baylor University Medical Center v. Rosa*, 240 S.W.3d 565 (Tex.App.-Dallas 2007, pet. denied), this Court "reason[ed] that objections to qualifications have different deadlines than the deadline set out in [s]ection 74.351(a) for objections to the sufficiency of a report." We disagree. In *Rosa* we merely noted that the 21–day deadline for objecting to the sufficiency of an expert report is contained in section 74.351(a), while the 21–day deadline for objecting to an expert's qualifications to opine on the standard of care in a suit against a health care provider is contained in section 74.402(f). *Id.* at 568 (citing Tex. Civ. Prac. & Rem.Code Ann. § 74.402(f)).

■ Next, Bakhtari also apparently contends that objections to an expert's qualifications to provide an expert report under chapter 74 do not need to be asserted within 21 days because an objection that an expert is unqualified is tantamount to an objection that the plaintiff failed "to serve an '*expert* report' at all."[5] This

---

4. With respect to O'Donnell's qualifications, Bakhtari argued in her initial objections that O'Donnell is not qualified to render an expert opinion in this case because he is not a physician. She also argued that O'Donnell's report is substantively deficient because it does not describe the applicable standard of care, how that standard was allegedly breached, or the causal relationship between Bakhtari's alleged breach of the standard of care and Dumas's injuries and death. For the reasons described later in this opinion, we do not reach the issue of O'Donnell's qualifications or the sufficiency of his report. We note, however, that in a health care liability claim against a physician, a person is not qualified to provide an expert report on the standard of care, breach, or causation unless that person is a physician. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 74.351(r)(5)(A) & (C), 74.401(a), 74.403(a).

5. Emphasis in original.

argument, however, was recently considered and rejected by our sister court in *Beckwith v. White,* 285 S.W.3d 56 (Tex. App.-Houston [1st Dist.] 2009, no pet.). In *Beckwith,* the plaintiff timely served the defendant physician with two expert reports. Six months later, the defendant objected to the sufficiency of one of the reports on the ground that the expert was not a physician and was therefore not qualified to render an expert opinion. In response to the plaintiff's argument that the objection was waived, the defendant argued that the objection "does not go to the sufficiency of the report; rather, that [the expert's] status as a non-physician is per se fatal to whether [the plaintiff] satisfied her initial burden to serve an expert report." *Id.* at 63. In other words, the defendant argued that because the expert was not a physician, "his report is the legal equivalent of 'no report' under section 74.351." *Id.* at 62. Our sister court rejected that argument and held that the defendant was required to object to the expert's qualifications within 21 days of receiving the expert's CV. *Id.* at 63.[6] We agree with the reasoning and holding in *Beckwith.*

Alternatively, Bakhtari also apparently contends that because she raised "initial challenges" to the expert reports in her motion to dismiss filed sixteen days after the expert reports were served, we must address all of her objections. More specifically, she generally argues on appeal that "a considerable amount of time can pass after a defendant receives expert reports before that defendant *moves to dismiss* without that defendant waiving her right to dismiss."[7] To support this general contention, Bakhtari relies upon two distinguishable cases. The first case Bakhtari cites is *Jernigan v. Langley,* 111 S.W.3d 153 (Tex.2003). In that case, although the defendant physician "did not object to the plaintiff's expert reports as inadequate for over 600 days after they were filed," the court rejected the plaintiff's argument that the defendant's objections were waived. *Id.* at 155–56. But the *Jernigan* court construed the predecessor to chapter 74, which did not impose a deadline for a defendant to object to the sufficiency of an expert report. *Id.* at 156. The *Jernigan* court also specifically noted that the legislature had recently codified chapter 74 and added a deadline to object to the insufficiency of an expert report. *Id.* at 156 n. 1 ("Under the new law, a defendant health care provider has twenty-one days after being served with the expert report to object to the report's insufficiency or 'all objections are waived.' ").

The second case Bakhtari cites is this Court's decision in *Seifert v. Price,* No. 05–08–00655–CV, 2008 WL 5341045 (Tex.App.-Dallas Dec. 23, 2008, pet. denied) (mem. op.). In *Seifert,* the plaintiff's expert report was due no later than May 18, 2005, but it was not served until August 2005. Although the defendants waited over two years before moving to dismiss, we concluded that the defendants did not waive their right to dismissal. But in

---

**6.** Bakhtari's "no *expert* report" argument is the corollary to the "no expert *report* " argument raised by the defendant and rejected by the court in *Ogletree v. Matthews,* 262 S.W.3d 316 (Tex.2007). In *Ogletree,* the defendant hospital argued that it was not obligated to object to the appellees' expert reports within 21 days "because, in effect, no report had been served due to the absence of a physician's opinion on causation." *Id.* at 322.

The supreme court rejected this argument and held that the hospital's objections were waived because they "are directed to the reports' sufficiency, and they could have been urged within the statutory twenty-one day period, as the statute clearly requires." *Id.* (citing Tex. Civ. Prac. & Rem.Code Ann. § 74.351).

**7.** Emphasis in original.

*Seifert,* it was undisputed that no report was served until after the plaintiff's statutory deadline expired and the defendants' motion to dismiss was based on belated service of the report. 2008 WL 5341045, at *1. Under section 74.351(b), when no expert report is served before the claimant's 120–day deadline expires, dismissal is mandatory. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(b). And unlike objections to an expert's qualifications or to the sufficiency of a report, chapter 74 "contains no deadline to challenge the timeliness of an expert report." *Troeger,* 274 S.W.3d at 107; *see also Maris v. Hendricks,* 262 S.W.3d 379, 384 (Tex.App.-Fort Worth 2008, pet. denied) ("section 74.351(a)'s twenty-one day objection deadline does not apply to an objection to an expert report based on belated service").

In what it described as "a case of first impression," our sister court in Waco recently addressed a similar scenario in *Williams,* another interlocutory appeal challenging the sufficiency of a report under chapter 74. In *Williams,* the defendant argued on appeal that the plaintiff's report (1) was speculative, (2) was conclusory, (3) failed to identify how the defendant's acts deviated from the applicable standard of care, and (4) failed to provide sufficient information on causation. But the plaintiff argued that the last three objections were waived "because these objections were made later than the 21st day after the date the expert report was served." 264 S.W.3d at 890. Our sister court reviewed the record and noted that the defendant's "initial and only timely objection to the expert report was that in two places, the expert's use of 'could have' to describe the causal connection between the breach of the standard of care and the damages or injury to [the plaintiff] was speculative." *Id.* at 891–91. And in construing the language of section 74.351(a), the court held "that the plain language of

the statute means what it says: all objections to the sufficiency of the expert report not filed and served by the 21st day after the date the expert report is served are waived." *Id.* at 891. Applying section 74.351(a), the court concluded that the defendant waived her last three objections—two of which were not raised within the time required and one of which was raised for the first time on appeal—and declined to address those objections on appeal. *Id.*

■ Based on the plain language of chapter 74, we agree with the *Williams* court that when a report and CV are timely served on a defendant physician, any objections to the expert's qualifications, and any objections to the sufficiency of the report, must be raised by the defendant within 21 days after service of the report and CV. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). And applying chapter 74 to the facts in this case, Bakhtari's deadline to raise objections to appellees' experts' qualifications and reports was June 8, 2006—21 days after the trial court granted appellees' unopposed motion to supplement their experts' reports with the required CVs. Consequently, Bakhtari waived the objections that were made for the first time after that date, and the trial court could not have properly granted Bakhtari's motion to dismiss based on her untimely objections. *See generally Biggs,* 237 S.W.3d at 916 (trial court does not have discretion in applying the law to the facts).

■ But to the extent appellees contend that Bakhtari waived her timely objections because she did not set a hearing on them on or before her statutory deadline to raise objections expired, we disagree. Section 74.351(a) only requires a defendant to "file and serve" objections within 21 days after receiving the report and CV. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a). Chap-

ter 74 does not contain a deadline for setting a hearing on a defendant's objections to the sufficiency of a report. As a result, in determining whether the trial court's decision to deny Bakhtari's motion to dismiss constitutes an abuse of discretion, we confine our analysis to whether the trial court could have reasonably rejected Bakhtari's timely objections. *See Williams,* 264 S.W.3d at 891; *Cf. Rosa,* 240 S.W.3d at 568–69 (considering motion to dismiss in which defendants "elaborated on the specific arguments" made in their timely objections to the expert reports).

### ANALYSIS OF BAKHTARI'S TIMELY OBJECTIONS TO KESSLER'S QUALIFICATIONS AND REPORT

We begin by analyzing Bakhtari's timely objection to Kessler's qualifications and her timely objection to the sufficiency of Kessler's report because our conclusions

about those objections are dispositive of this appeal.

### Is Kessler qualified to render an expert opinion on the applicable standard of care in this case?

Bakhtari's timely objection to Kessler's qualifications, which she raises again on appeal, is that Kessler is not qualified to render an expert opinion on the standard of care in this case in light of the common-law "community-standard rule, or the locality rule." In other words, Bakhtari argues that Kessler is not qualified because "he is a Virginia internal medicine practitioner, not a Texas internal medicine practitioner," and because his report does not adequately describe why he is qualified to provide an expert opinion on "the standards acceptable to the medical communities of [the] Dallas or Collin County area, or of similar communities."[8] Relying sole-

8. With respect to his qualifications to provide an expert opinion in this case, Kessler's report states:

> I am qualified to render opinions in this case because I am a licensed physician in the specialty field of internal medicine. I received my medical degree from Brown University School of Medicine in 1975, and completed my residency in internal medicine at Rush Presbyterian, St. Luke's Medical Center in Chicago, Illinois in 1978. I am a board certified physician in the field of Internal Medicine. In addition to my work as a practicing physician at Sentara Norfolk General Hospital in Norfolk, Virginia[,] I have been an assistant professor, (voluntary faculty), of the Eastern Virginia Medical School, Norfolk, Virginia since 1995. My Curriculum Vitae is attached. I am qualified to render opinions in internal medicine because I practice in internal medicine which involves the same type of treatment as that delivered at the time this report is given. I have over twenty-nine (29) years of active clinical experience in internal medicine. I have knowledge of accepted standards of care for physicians, and I am qualified on the basis of my train-

> ing and experience to offer expert opinions regarding those accepted standards of care for physicians in the field of internal medicine.
> As part of my training as an internal medicine specialist, I am required to know what drugs can be used to achieve definite outcomes that improve the patient's quality of life. I am also required to know how various drugs impact the patient, proper drug selections, the effects of over-dosage, how drugs may adversely affect the patient, and how combination of drugs may interact to cause inappropriate and/or harmful results in the patient.
> Although I am from Virginia, the standards of care for physicians are applicable in the community where the physician is located, and the standards in regards to this matter are the same for physicians in the United States. Moreover, the knowledge required to identify appropriate drug selection for patients, the interaction and combination of different drugs, and the adverse effects of over-dosage and harmful effects of certain combinations of drugs is universal to physicians who practice in the field of internal medicine regardless of which state the physician practices.

ly on this Court's decision in *Hickson v. Martinez,* 707 S.W.2d 919, 925 (Tex.App.-Dallas 1985), *writ ref'd n.r.e.,* 716 S.W.2d 499 (Tex.1986) (per curiam), Bakhtari argues that "[u]nless a different standard is imposed by statute, expert testimony on the standards of care is admissible only if the expert can offer testimony on the standards of practice for the relevant or similar community." Among other distinguishing factors, however, our decision in *Hickson* predated the enactment of the expert witness and report sections of chapter 74 and its predecessor statute. *See generally Lee v. Mitchell,* 23 S.W.3d 209, 212–15 (Tex.App.-Dallas 2000, pet. denied) (tracing legislative history of predecessor to chapter 74 and noting expert witness and report sections of that statute "were not added until 1989 and 1993, respectively, and were amended in 1995"). In other words, a different standard is now imposed by statute.

Under section 74.351(r)(5)(A), a person is qualified to provide an expert report about whether a physician departed from the accepted standards of medical care if the person is "qualified to testify under the requirements of Section 74.401." TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(r)(5)(A). Section 74.401 requires that the person be a physician who:

> (1) is practicing medicine at the time such testimony is given or was practicing medicine at the time the claim arose;
> (2) has knowledge of accepted standards of medical care for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and
> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care.

*Id.* § 74.401(a). For purposes of section 74.401, "physician" is defined as a person who is "licensed to practice medicine in one or more states in the United States"; and "practicing medicine" includes, but is not limited to, "training residents or students at an accredited school of medicine." *Id.* § 74.401(g)(1), (b). Section 74.401 further instructs that "in determining whether a witness is qualified on the basis of training or experience," courts should consider "whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is board certified or has other substantial training or experience in an area of medical practice relevant to the claim; and (2) is actively practicing medicine in rendering medical care services relevant to the claim." *Id.* § 74.401(c).

■ In short, chapter 74 does not require that a physician providing an expert opinion on the applicable standard of care in a suit against a physician be from the same community, or a similar community, as the defendant physician. *See Springer v. Johnson,* 280 S.W.3d 322, 326–31 (Tex. App.-Texarkana 2008, no pet.) (construing chapter 74 and rejecting argument that physician must be licensed in Texas to provide expert report on causation in suit against Texas physician or health care provider); *cf. Cook,* 275 S.W.3d at 582–84 (construing chapter 74 and rejecting argument that physician expert witnesses who practiced medicine in California and New Jersey were not qualified to opine on applicable standards of care in suit against physician assistant because "they did not state they are familiar with the standards of care applicable to a physician assistant practicing in Texas"); *Lee,* 23 S.W.3d at 215 (construing predecessor to chapter 74 and rejecting argument that physician must be licensed in Texas to provide expert report); *see generally Peterson v. Shields,* 652 S.W.2d 929, 930–31 (Tex.1983) (holding common-law locality rule no longer applies to informed-consent cases involving medical care or surgical proce-

dures performed after effective date of 1977 Medical Liability and Insurance Improvement Act because that act replaced "common law locality rule with a 'reasonable' person rule"). Consequently, we cannot conclude that the trial court abused its discretion when it rejected Bakhtari's timely objection to Kessler's qualifications.

### Is Kessler's report conclusory as to causation?

Bakhtari's timely objection to the sufficiency of Kessler's report, which she raises again on appeal, is that Kessler's report is conclusory with respect to causation. In particular, Bakhtari argues that Kessler's report is deficient because it does not identify facts sufficient to explain how Bakhtari's alleged breach of the standard of care caused Dumas's injury and death.

**Causation Opinion Requirements Under Chapter 74**

An expert report under chapter 74 must provide enough information to fulfill two purposes: it must inform the defendant of the specific conduct the plaintiff has called into question, and provide a basis for the trial judge to conclude that the claims have merit. *Quinones v. Pin,* 298 S.W.3d 806, 810 (Tex.App.-Dallas 2009, no pet.). To satisfy the required element of causation under chapter 74, an expert report must include a fair summary of the expert's opinion regarding the causal relationship between the breach of the standard of care and the injury, harm, or damages claimed. *Id.* at 814. But an expert report does not need to marshal all of the plaintiff's proof; it may be informal and the information presented need not meet the same requirements as evidence

offered in summary judgment proceedings or in a trial. *See Godat v. Springs,* No. 05-09-00791-CV, 2009 WL 2385569, at *3 (Tex.App.-Dallas Aug. 5, 2009, no pet.) (mem. op.).

### Kessler's Causation Opinion

With these standards in mind, we must decide whether Kessler's report explains the basis of his conclusion that Bakhtari's conduct caused Dumas's death, and links that opinion to the facts of this case. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex.2002) (per curiam). We determine whether Kessler's causation opinion is sufficient by considering it in the context of his entire report. *See VHS San Antonio Partners LLC v. Garcia,* No. 04-09-00297-CV, 2009 WL 3223178, at *3 (Tex.App.-San Antonio, Oct. 7, 2009, pet. denied) (mem. op.) ("[C]ourts are entitled to read the causation section of an expert report in the context of the entire report.") (citing *Philipp v. McCreedy,* 298 S.W.3d 682, 690-91 (Tex.App.-San Antonio 2009, no pet.)).

In his report, Kessler opines on all three required elements under chapter 74: standard of care, breach, and causation. *See* Tex. Civ. Prac. & Rem.Code Ann. § 74.351(r)(6). First, in describing the applicable standard of care, Kessler explains that because the prescription drug Restoril/temazepam is known to worsen depression and to promote suicidal thinking in depressed patients, it should only be prescribed for up to one month at a time with no refills, and only to patients who are closely monitored by the prescribing physician.[9] Next, with respect to Bakhtari's

9. Specifically, with respect to the applicable standard of care, Kessler's report states:

It is my opinion that Restoril/temazepam is dangerous drug that should be prescribed with caution and appropraite care. Resto-

ril/temazepam is intended only for a short term use for no more than a term of a couple of weeks, and under no circumstances should Restoril/temazapam be prescribed in quantities to exceed a one-month

alleged breach of the applicable standard of care, Kessler explains that Bakhtari breached that standard by (1) prescribing Restoril/temazepam to Dumas for thirty days with three refills without proper monitoring, when she knew from Dumas "that he was in a depressed state," (2) failing to consult with, or refer Dumas to, a mental health specialist and/or psychiatrist, (3) failing to adequately warn Dumas about the potential dangers of taking Restoril/temazepam, and (4) prescribing Restoril/temazepam to Dumas in combination with other drugs she had prescribed to him.[10] And finally, with respect to causation, Kessler's report states:

supply. A prescription for Restoril/temazapam should not be given with re-fills or capable of being filled multiple times in short periods of time. Restoril/temazapam is a controlled substance as defined in Schedule III of the Texas Health and Safety Code. Restoril/temazapam has a known side effect to worsen depression and to promote suicidal thinking in patients who are in a depressed state.

. . .

It is the standard of care for physicians to be careful in selection, prescription and monitoring of dangerous medications such as Restoril/temazepam. It is the standard of care for physicians treating patients at risk such as Paul Brent Dumas to carefully select, prescribe and monitor dangerous medications such as Restoril/temazepam. The standard of care prescribing Restoril/temazepam requires careful monitoring, attention to cautions, warnings, drug interactions major risk of Restoril/temazepam, a psychotropic drug, is that of suicide. In particular, Restoril/temazepam be prescribed for no more than a couple weeks with careful monitoring and follow-up assessment of the patient to determine the effectiveness of the treatment and to evaluate the patient for adverse and contra-indications. The standard of care for the physician requires that when medications are prescribed, particularly in the context of dangerous drugs such as Restoril/temapazepam, the physician must prescribe based upon contra-indications, adverse affects, warnings, and the dangers of drug combination. It is the standard of care for physicians that Restoril/temazepam should not be prescribed for long periods of time, and should not be prescribed in quantities greater than one-month supply. It is the standard of care for a physician that any selection or prescription of a dangerous drug such as Restoril/temazepam requires careful monitoring and timely patient assessment. It is the standard of care for a

physician that Restoril/temazepam should not be prescribed as a re-fillable drug due to the requirements for the prescibing physician to carefully evaluate the patient. It is the standard of care for a physician to consult with a mental health specialist or psychiatrist or refer a patient with a mental health specialist when the patient presents with the indications presented by Paul Brent Dumas. It is the standard of care for physicians to carefully and frequently monitor patients, such as Paul Brent Dumas, when they present with depression and are prescribed a dangerous drug such as Restoril/temazepam which puts such patients at a greater risk for worsening depression and suicidal thoughts and tendencies.

(Typographical errors and omissions in original.)

10. Specifically, with respect to the alleged breach of the applicable standard of care, Kessler's report states:

It is my opinion that Dr. Bakhtari breached the standard of care for physicians when she failed to carefully monitor Paul Brent Dumas, and when she prescribed the dangerous drug, Restoril/temazepam in doses of 30 tablets each with three refills when the standard of care according to medical literature and common practice should be no more than the initial presciption for a couple of weeks with a follow-up physician consultation, and under no circumstances a prescription for more than a thirty (30) day supply and no re-fills. Dr. Bakhtari breached the standard of care when she knew from Paul Brent Dumas that he was in a depressed state and she prescribed the Restoril/temazepam in large, refillable dosages when the standard of care requires a small dosage with frequent monitoring. Dr. Bakhtari breached the standard of care when she failed to warn Paul Brent Dumas of the potential dangers of taking the precription for Restoril/temazepam. Dr. Bakhtari breached the standard of care when

The opinion rendered and contained in this case are all in terms of a reasonable medical probability.

. . .

It is my opinion, based on review of the medical records as well as my education, training and experience that the Restoril/temapazem prescribed for Paul Brent Dumas and dispensed by Walgreens, Co., on October 9, 2003 was a drug that induced Paul Brent Dumas' death and caused the damages in this case.

. . .

It is my opinion that Dr. Bakhtari' failed to meet and breached the standard of care as described above caused the injuries and damages suffered by Paul Brent Dumas and caused his death.

> she failed to consult a mental health specialist and/or psychiatrist and failed to refer Paul Brent Dumas to a mental health specialist and/or psychiatrist for evaluation and treatment for his depressed state. Dr. Bakhtari breached the standard of care when she chose inappropriate procedures and treatments for the care of Paul Brent Dumas. Dr. Bakhtari breached the standard of care when she failed to properly treat Paul Brent Dumas. It is my opinion that prescribing the Restoril/temazepam for 120 days without proper or professional on-going assessment and monitoring of Paul Brent Dumas' condition, including his mental and physical state was a breach of the standard of care for a physician. It is my opinion that Dr. Bakhtari also fell below the standard of care when she prescibed the Restoril/temazepam in combination with other drugs she had prescribed which were known by a competent physician to have contra-indications known dangers of drug interactions that would be harmful and increase the danger to Paul Brent Dumas. (Typographical errors and omissions in original.)

11. To support their argument, appellees cite the following cases in which appellate courts concluded that causation opinions were sufficient to meet the requirements of chapter 74: *Mosely v. Mundine*, 249 S.W.3d 775, 780–81 (Tex.App.-Dallas 2008, no pet.) (report ex-

(Typographical errors and omissions in original.)

Appellees contend that Kessler's report is not conclusory with respect to causation because "it incorporates all of the breaches described in detail" in the rest of the report.[11] In contrast, Bakhtari argues that Kessler's report does not identify facts sufficient to explain how Bakhtari's alleged breach of the standard of care caused Dumas's injury and death because Kessler "assumed . . . the existence of 'depression' " and does not explain how Bakhtari's alleged breach of the standard of care "aggravated such a condition, impeded or prohibited its treatment, or otherwise affected the patient's prognosis." We disagree. In his report, Kessler essentially

plained medical basis for expert's conclusion that doctor's failure to identify a one-centimeter nodule on patient's chest x-ray twenty-one months earlier resulted in tumor growth to six centimeters with undetermined metastasis and stated: "[t]his failure resulted in delayed diagnosis of lung cancer, required aggressive and invasive treatment and in all medical probability significant reduction in the life expectancy of Mrs. Mundine."); *Baylor College of Medicine v. Pokluda*, 283 S.W.3d 110, 122–23 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (report explained how excessive pressure due to improper padding or placement of tourniquet during surgery caused nerve damage); *Lakshmikanth v. Leal*, No. 13–08–00389–CV, 2009 WL 140741, at *2 (Tex.App.-Corpus Christi Jan. 22, 2009, pet. denied) (mem. op.) (report explained how doctor's alleged negligence in failing to prescribe antibiotics caused onset of severe infection requiring amputation of patient's arm); *Moore v. Sutherland*, 107 S.W.3d 786, 790 (Tex.App.-Texarkana 2003, pet. denied) (report explained how failure to diagnose bile peritonitis caused patient's death); *Springer*, 280 S.W.3d at 332 (report explained how failure to administer anticoagulation therapy caused patient's stroke); *Martinez v. Martinez*, No. 13–05–00736–CV, 2007 WL 2325929, at *5–6 (Tex.App.-Corpus Christi Aug. 16, 2007, pet. denied) (mem. op.) (report explained how failure to treat patient's vaginitis cause pre-term labor resulting in delivery of nonviable fetus).

opines that Bakhtari breached the applicable standard of care because she knew Dumas was depressed and nevertheless prescribed Restoril/temazepam to Dumas for multiple months without adequate warnings and monitoring, and without consulting with, or referring Dumas to, a mental health specialist and/or psychiatrist. *See generally Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 880 (Tex.2001) (expert report must include "specific information about what the defendant should have done differently"). Kessler also opines that these specific alleged failures caused Dumas's death. We conclude that the trial court could have reasonably determined that Kessler adequately explained the basis for his conclusion and linked that conclusion to the facts. *Wright,* 79 S.W.3d at 52; *see also Puempel v. Lopez,* No. 05–07–00371, 2007 WL 3173405, at *3–4 (Tex.App.-Dallas Oct. 31, 2007, no pet.) (mem. op.) (holding expert reports represented objective, good-faith effort to comply with chapter 74's requirements as to one defendant because experts opined prescribing excessive dosages of prescription drug Phentermine over excessive duration of time was breach of standard of care and patient's sudden death from arrhythmia was more likely than not a result of effects of Phentermine). As a result, we cannot conclude that the trial court abused its discretion when it rejected Bakhtari's sole timely objection to the sufficiency of Kessler's report.[12] *See generally Larson v. Downing,* 197 S.W.3d 303, 305 (Tex.2006) (per curiam) (when appellate court reviews trial court rulings for abuse of discretion, "[c]lose calls must go to the trial court").

Based on our conclusion that Kessler's report is not impermissibly conclusory with respect to causation, and based on the facts that (1) Bakhtari waived any and all other objections to the sufficiency of the report, and (2) the report addresses the necessary elements of standard of care, breach, and causation, we also conclude that the trial court could have reasonably determined that Kessler's report alone constituted an objective, good-faith effort to comply with the requirements of an expert report under chapter 74. *See generally Quinones,* 298 S.W.3d at 810 ("To constitute an objective, good-faith effort, the report must inform the defendant of the specific conduct the plaintiff has called into question, and the report must provide a basis for the trial judge to conclude the claims have merit."). As a result, we do not address Bakhtari's objections to O'Donnell's qualifications and report because even if we concluded that O'Donnell is not qualified to opine in this case or that his report is substantively deficient as to any of the three required elements under chapter 74, our conclusion would not affect the disposition of this appeal. *See* TEX. R.APP. P. 47.1 (opinion must address every issue raised an necessary to final disposition of appeal); *see also Osonma v. Smith,* No. 04–08–00841–CV, 2009 WL 1900404, at *3 n. 1 (Tex.App.-San Antonio July 1, 2009, pet. denied) (mem. op.) ("Because we hold that Dr. Krakower's expert report was adequate, we need not consider whether the other expert['s] report ... was adequate."); *see generally Rosa,* 240 S.W.3d at 572 (declining to address whether deposition excerpts from treating physician satisfied statutory requirements of an expert report because reports from two other ex-

---

**12.** Citing generally to *Providence Health Center v. Dowell,* 262 S.W.3d 324 (Tex.2008), Bakhtari also states that "medical malpractice cases alleging suicide caused by negligence present inherent problems with causation."

But Bakhtari does not explain what she means by "inherent problems," nor does she otherwise explain the basis for her conclusory statement about medical malpractice cases alleging suicide.

perts represented objective, good-faith effort to comply with requirements of chapter 74). Additionally, appellees state in their appellees' brief that "Dr. O'Donnell's expert report was not offered for standard of care or causation pursuant to Chapter 74."

### CONCLUSION

We conclude that the trial court did not abuse its discretion when it rejected Bakhtari's timely objections to Kessler's qualifications and report. As a result, we conclude that the trial court did not abuse its discretion when it denied Bakhtari's motion to dismiss. We affirm the trial court's order denying Bakhtari's motion to dismiss.