

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

## No. 07-18-00341-CV

___

STEFFAN SCHERER, DDS, MS, APPELLANT

V.

MELINDA GANDY, APPELLEE

___

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2017-526,364, Honorable Ruben Gonzales Reyes, Presiding

___

February 28, 2019

## MEMORANDUM OPINION

Before QUINN, C.J.,[1] and CAMPBELL and PARKER, JJ.

This is an interlocutory appeal from an order finding an expert report sufficient to proceed with a dental malpractice case.[2]  Appellant, Steffan Scherer, DDS, MS, contends that dismissal of the negligence claims asserted against him by appellee, Melinda Gandy, is mandated because the expert reports she filed fail to meet the statutory requirements.

___

[1] Chief Justice Brian Quinn, not participating.

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(9) (West 2008) (allowing interlocutory appeal when trial court "denies all or part of the relief sought . . . under Section 74.351(b)").

*See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West 2017).[3]  We affirm the trial court's denial of Scherer's motion to dismiss.

## Background

Dr. Scherer, an endodontist, performed a root canal on Gandy on June 1, 2015, without incident.  During that procedure, he used Septocaine as an anesthetic.  On June 29, 2015, Dr. Scherer performed a root canal on another of Gandy's teeth.  This time, he used Prilocaine as an anesthetic.  According to Gandy's pleadings, during this second procedure, she experienced what felt to her like several lightning bolts hitting the side of her face.  She cried out in pain, but Dr. Scherer assured her that this was common and continued the root canal.  Gandy's pain continued throughout the procedure and into the following days.  She reported her pain, numbness, and severe headaches to Dr. Scherer on July 1 and again on July 2.  Dr. Scherer advised her to continue alternating hot and cold packs and rinsing with salt water.  He asserted that the root canal was "clean." Gandy then consulted her regular dentist and another endodontist, which led to an evaluation by a neurologist.  Neurological testing indicated an injury to Gandy's trigeminal nerve.

Gandy filed suit, alleging that Dr. Scherer was negligent in his provision of dental care.  Pursuant to Chapter 74 of the Civil Practice and Remedies Code, Gandy served Dr. Scherer with the expert report and curriculum vitae of Maria C. Maranga, DDS, on December 12, 2017.  Dr. Scherer filed objections to Dr. Maranga's report and a motion to dismiss.  The trial court denied the motion to dismiss, but sustained Dr. Scherer's

---

[3] Further references to provisions of the Texas Civil Practice and Remedies Code will be to "section _" or § _."

objections and granted a thirty-day extension to cure deficiencies in the report. *See* § 74.351(c) (providing that court may grant one thirty-day extension of time to the claimant to cure the deficiency). Gandy then served a supplemental report by Dr. Maranga, to which Dr. Scherer objected, filing another motion to dismiss. Following a hearing, the trial court overruled Dr. Scherer's objections and denied the motion to dismiss. Dr. Scherer filed this interlocutory appeal, alleging that the trial court abused its discretion by concluding the reports were sufficient.

## Standard of Review

In reviewing the trial court's decision regarding the adequacy of an expert report, we apply the abuse of discretion standard. *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam).

## Expert Report Requirements

Section 74.351 requires any person who brings a health care liability claim to provide an expert report, within 120 days of filing the claim, for each physician or health care provider against whom a claim is asserted. § 74.351(a). An expert report means a written report that provides a fair summary of the expert's opinions regarding (1) applicable standards of care, (2) the manner in which the care rendered by the physician

or health care provider failed to meet the standards, and (3) the causal relationship between that failure and the injury, harm, or damages claimed. § 74.351(r)(6). A report satisfies these requirements when it provides (1) enough information to inform the defendant of the specific conduct that is questioned, and (2) a basis for the trial court to conclude that the claim has merit. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013). If a sufficient expert report is not filed within the requisite period, the court is required to enter an order dismissing the claim, with prejudice. *See* § 74.351(b).

## Analysis

Dr. Scherer objected that Dr. Maranga's reports[4] fail to sufficiently explain the standard of care, how it was breached, and a thorough analysis regarding causation. He also alleges that the complaints in the report do not match the claims in Gandy's petition. We will address his objections in turn.

### Standard of Care

First, Dr. Scherer alleges that Dr. Maranga's reports fail to articulate the standard of care. The expert report must state the applicable standard of care as well as the manner in which the health care provider failed to meet that standard of care. § 74.351(r)(6). Whether a defendant breached the standard of care "cannot be determined absent specific information about what the defendant should have done differently." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880

---

[4] When, as here, an expert report has been supplemented, courts have considered both the original and supplemental reports in conducting an analysis of the adequacy of the reports. *See, e.g., Packard v. Guerra*, 252 S.W.3d 511, 515-16, 534-35 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (considering previously filed reports that were refiled and supplemented). We will consider Dr. Maranga's original and supplemental reports together in conducting our analysis.

4

(Tex. 2001). The expert is not required to give a full statement of the standard of care and how it was breached, but she must "set out what care was expected, but not given." *Id.*

Dr. Maranga's original report stated the following:

The standard of care requires that healthcare providers recognize an anesthetic reaction before and during and after treatment on a patient. After careful assessment of the given material, I believe that Dr. Scherer deviated from this standard by choosing an anesthetic that can be toxic in some patients (he had previously used another anesthetic for Mrs. Gandy's other root canal) and additionally by failing to recognize that a reaction to the anesthetic took place thus delaying treatment for the reaction by two weeks.

Dr. Maranga's supplemental report was more expansive. Regarding the use of Prilocaine, she explained: "It is a deviation from the accepted standard of care for an Endodontist/Dentist to use Prilocaine for patients undergoing dental procedures, root canals included." She continued, "Dr. Scherer breached the standard of care in using Prilocaine on Mrs. Gandy, as opposed to another anesthetic, such as 4% Septocaine like he used in the root canal on tooth number 14 on June 1, 2015." She later stated that Prilocaine "is known to be toxic in patients and has been cited by authors and literature previously stated as causing trigeminal neuralgia, the same condition suffered by Mrs. Gandy." She reiterated, "It is for this reason that it is a deviation from the accepted standard of care for an Endodontist/Dentist to use Prilocaine for patients undergoing dental procedures, root canals included."

Dr. Maranga also observed that Gandy cried out in pain soon after Dr. Scherer administered the Prilocaine, and "Dr. Scherer responded to Mrs. Gandy saying that it's alright [sic], that it is very common, and that it just meant he was getting close to the nerve. Mrs. Gandy was clearly not alright [sic], as the symptoms she was exhibiting are

5

classic symptoms of a nerve injury, more specifically, a trigeminal nerve injury." She opined, "At that point, the standard of care required Dr. Scherer to recognize that an anesthetic reaction was occurring and stop the procedure. Dr. Scherer breached the standard of care in failing to recognize, based on Mrs. Gandy's symptoms . . . that Mrs. Gandy was suffering from a nerve injury." Later in her report, Dr. Maranga adds, "If and when a patient cries out in pain, the most logical assessment by a doctor is to stop the procedure, assess, evaluate and treat the new problem."

On appeal, Dr. Scherer contends that the reports (1) contradict themselves about the standard of care for use of Prilocaine, and (2) fail to explain how an endodontist/dentist should recognize a complication from the anesthetic. Dr. Scherer's argument that the reports are contradictory regarding the standard of care is based on Dr. Maranga's statements that (1) the use of Prilocaine on a patient undergoing a root canal is a deviation from the standard of care but also (2) "[c]onsiderable caution must be followed when and if" Prilocaine is used as an anesthetic. Dr. Scherer argues that if the use of Prilocaine is prohibited, one should not need to use "considerable caution" when using the drug or "recognize complications" of it. He concludes that "Dr. Maranga's standard-of-care statement based on prohibition is inadequate because she admits that providers uses [sic] the anesthetic."

At the outset, we must address Gandy's contention that this particular objection has been waived by Dr. Scherer, as it was not made within twenty-one days of receipt of Dr. Maranga's supplemental report. *See, e.g., Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 493 (Tex. App.—Dallas 2010, no pet.) (any objections to expert report other than objections made within twenty-one-day period are waived); *Williams v. Mora*, 264 S.W.3d

6

888, 890-91 (Tex. App.—Waco 2008, no pet.) (same).  After reviewing the record, we conclude that Dr. Scherer has not waived consideration of this complaint.  He timely objected that Dr. Maranga's expert reports "failed to articulate the standard of care," and he specifically alleged that the only "identifiable and explicitly stated standard of care" was Dr. Maranga's assertion that "the standard of care required Dr. Scherer to recognize that an anesthetic reaction was occurring and stop the procedure."  In our view, these objections to potential deficiencies in Dr. Maranga's statements on the standard of care were adequate to encompass Dr. Scherer's complaint.

However, we disagree with Dr. Scherer's claim that Dr. Maranga's seemingly inharmonious declarations render her statement on the standard of care deficient.  Dr. Maranga's recognition that some providers use Prilocaine does not somehow invalidate her position that such use is not recommended.  Moreover, the trial court could have reasonably found that the general statement that considerable caution is required when Prilocaine is used does not directly contradict the specific assertion that Prilocaine should not be used for patients, such as Gandy, undergoing dental procedures.  Here, Dr. Maranga identified Prilocaine as an anesthetic "that can be toxic" and clearly called into question its use in a patient undergoing a root canal.  The trial court had the discretion to resolve inconsistencies, if any, in its review of Dr. Maranga's report.  *See Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 144 (Tex. 2015) (per curiam) (stating that trial court has discretion to review expert report, sort out its contents, resolve any inconsistencies in it, and determine whether it demonstrates good-faith effort to show claimant's claims have merit).

7

Dr. Scherer's second complaint regarding the standard of care is that Dr. Maranga did not explain the specific steps a healthcare provider should take to recognize an anesthetic reaction. The Texas Supreme Court does not require an expert report to detail specific steps. *See Laurel Ridge Treatment Ctr. v. Garcia*, No. 04-12-00098-CV, 2012 Tex. App. LEXIS 7243, at *7 (Tex. App.—San Antonio Aug. 29, 2012, pet. denied) (mem. op.) (citing *Palacios*, 46 S.W.3d at 879, in rejecting argument that expert report was required to detail "exact steps" for providing safe environment). Rather, the expert report is required to inform a defendant of the "specific conduct" that is called into question. Here, Dr. Maranga's supplemental report expressly states that "the symptoms [Gandy] was exhibiting are classic symptoms of nerve injury," indicating that Gandy's symptoms were problematic and should have prompted further diagnosis and treatment. Dr. Maranga further asserted, "If and when a patient cries out in pain, the most logical assessment by a doctor is to stop the procedure, assess, evaluate and treat the new problem before moving forward with the day's schedule."

Dr. Scherer takes issue with Dr. Maranga's reliance on Gandy's cry of pain; he suggests that because a root canal is a painful procedure, there was nothing about Gandy's crying that should have triggered recognition that there was a problem. Our inquiry is not into the believability of the standards articulated by Dr. Maranga, but whether her opinions constitute a good-faith effort to provide a fair summary of the necessary elements. *See Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 516-17 (Tex. 2017) (per curiam).

A fair summary is something less than a complete statement of the applicable standard, although reasonable minds may differ in determining just how much is required.

8

*See Palacios*, 46 S.W.3d at 880. Bearing this in mind, we conclude that the trial court was within its discretion to conclude that Dr. Maranga's reports satisfied the good-faith effort requirement as to the standard of care because the reports inform Dr. Scherer of the specific conduct called into question: his use of Prilocaine in treating Gandy and his continuation of the root canal in the face of an indication that Gandy was suffering an adverse event. *See Baty v. Futrell*, 543 S.W.3d 689, 693-94 (Tex. 2018); *see also IPH Health Care Servs., Inc. v. Ramsey*, No. 01-12-00390-CV, 2013 Tex. App. LEXIS 2985, at *37-39 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.) (mem. op.) (trial court could have reasonably concluded expert report was a "good-faith effort" where report alleged failure to recognize and respond to severe allergic reaction).

Breach of the Standard of Care

Next, Dr. Scherer alleges that Dr. Maranga's reports fail to provide anything other than a conclusion regarding any breach of the standard of care. Dr. Scherer contends that Dr. Maranga fails to detail why Dr. Scherer breached the standard of care by using Prilocaine with Gandy if Prilocaine is used in other patients and further fails to explain how Dr. Scherer should have recognized an anesthetic or nerve complication.

The reports' sufficiency as to the breach element correlates to their sufficiency as to the standard of care. *See Baty*, 543 S.W.3d at 697. Again, an expert report need only provide a "fair summary" of what the defendant should have done differently. *Palacios*, 46 S.W.3d at 880. Dr. Maranga's reports assert that Dr. Scherer should have used an anesthetic other than Prilocaine, should have recognized Gandy's cry of pain as a symptom of an anesthetic reaction, and should have stopped the procedure. While we

9

recognize the reports could have included additional details to support Dr. Maranga's position, at this stage of the litigation, the question is whether the reports constitute a good-faith effort to comply with the expert report requirement. *See Miller*, 536 S.W.3d at 516-17. We cannot say the trial court's determination was an abuse of discretion.

Causation

Finally, Dr. Scherer contends that Dr. Maranga's discussion of causation is conclusory. As to the use of Prilocaine, Dr. Maranga opined that, in all reasonable medical probability, Dr. Scherer's administration of Prilocaine caused Gandy's trigeminal neuralgia. Dr. Maranga's reports also state that Dr. Scherer used another anesthetic on Gandy without any problem, Gandy's symptoms arose following the administration of Prilocaine, Gandy exhibited "classic symptoms" of a nerve injury, medical studies show Prilocaine is known to cause trigeminal neuralgia, and Dr. Maranga agrees with Gandy's subsequent treaters who diagnosed Gandy as suffering from trigeminal neuralgia.

Dr. Scherer states, "Dr. Maranga did not explain why the medication causes this type of injury, or more specifically why one could conclude that was the case here." Dr. Maranga was not required to provide detailed, technical explanations. An expert report need not marshal all the claimant's proof necessary to prove causation at trial, nor must it anticipate or rebut all possible defensive theories that may be presented to the trial court. *Fortner v. Hosp. of the Sw., LLP*, 399 S.W.3d 373, 383 (Tex. App.—Dallas 2013, no pet.). The expert must simply provide some basis that the defendant's act or omission proximately caused injury, explain the basis of her statements, and link her conclusions to the facts. *Bowie Mem'l Hosp.*, 79 S.W.3d at 52-53.

10

As to Dr. Scherer's alleged failure to recognize an anesthetic reaction, Dr. Maranga opined that this failure resulted in Gandy's undergoing the duration of the root canal "in extreme pain as a result of the ongoing nerve injury" and in her "delay in proper treatment." In his objections to the expert reports, Dr. Scherer asserted that Dr. Maranga did not explain why a delay in treatment is a problem or how it resulted in an injury. We disagree. Dr. Maranga opined that if the anesthetic reaction had been recognized and the procedure halted, Gandy would have avoided the extreme pain of undergoing a root canal while suffering an ongoing nerve injury. She further stated that, after Gandy was assured by Dr. Scherer that her pain was nothing unusual, Gandy was properly diagnosed by other practitioners and obtained some relief. The trial court could have reasonably concluded that these opinions were sufficient to satisfy the causation element. *See, e.g., In re Barker*, 110 S.W.3d 486, 491 (Tex. App.—Amarillo 2003, orig. proceeding) (expert report sufficient because it explained negligent failure to recognize medical condition and delay in treatment increased severity of plaintiff's injuries).

Dr. Scherer also asserts that Dr. Maranga's reports fail to demonstrate that Gandy's injury was a foreseeable result of the claimed breaches of the standard of care. An expert report "need not use the words 'proximate cause,' 'foreseeability,' or 'cause in fact,'" and its adequacy is not dependent on its use of any magic words. *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (citing *Bowie Mem'l Hosp.*, 79 S.W.3d at 53). Here, Dr. Maranga's report indicates that using Prilocaine in dental procedures could result in harm and that failing to stop the root canal procedure upon signs of an adverse event could result in harm. The trial court could have reasonably concluded that the report represents a good-faith effort to demonstrate that

an endodontist would have anticipated that there was a danger associated with using Prilocaine on Gandy and with failing to halt the procedure on a patient with Gandy's symptoms. *See Miller*, 536 S.W.3d at 515 (foreseeability requirement satisfied where report made clear that failing to identify a lodged dental bridge and alert appropriate personnel could result in harm).

Failure to Address Pleadings

Dr. Scherer's final criticism of Dr. Maranga's expert reports is that the complaints in the reports do not match the claims in Gandy's petition, with the result that the expert reports cannot fulfill their purpose of showing that Gandy's claims have merit.

In the "cause of action" section of her original petition, Gandy states that she is suing due to the injuries she suffered "as a result of dental negligence." She then sets forth the factual background of her treatment by Dr. Scherer and subsequent dental care providers. Within this narrative, she alleges, "When this case is tried, the evidence will show that Dr. Scherer provided overly aggressive force during the root canal procedure, permanently injuring [her] nerve." In a more general statement, she asserts, "When this case is tried, the evidence will show that the Defendant, Dr. Steffan Scherer's acts and omissions fell below the standard of care for a dentist, and constituted negligence . . . ." Dr. Scherer maintains that, because Dr. Maranga's reports only address his use of the anesthetic and the alleged failure to recognize a complication, while Gandy's pleadings only advance the theory that he used too much force, not that he used the incorrect anesthetic or that he did not recognize a complication from the anesthetic, the expert reports fail to demonstrate that Gandy's claims have merit.

12

Gandy points out that Dr. Scherer has raised this argument for the first time on appeal. As noted above, objections to an expert report must be made within twenty-one days of receipt of the report; otherwise, they are waived. *Bakhtari*, 317 S.W.3d at 493; *Williams*, 264 S.W.3d at 890-91.

In his objections filed with the trial court, Dr. Scherer made specific challenges to the adequacy of Dr. Maranga's reports as to her opinions on the applicable standards of care, Dr. Scherer's alleged breaches of the standards, and the causal relationship between any breach and Gandy's injuries. Dr. Scherer did not complain that Gandy's allegation of dental negligence did not encompass the allegedly negligent acts and omissions highlighted in Dr. Maranga's reports, nor did he complain that the contentions in the reports regarding the use of Prilocaine and Gandy's adverse reaction to it failed to show that her claim of an "overly aggressive root canal treatment" had merit. Dr. Scherer contends that his general objection that Gandy "failed to provide a basis for [the] trial court to conclude that her case has any merit" served to preserve the specific complaint he now raises on appeal. We disagree. His general objection did not apprise the trial court of this specific challenge to an alleged lack of correlation between Gandy's pleadings and her expert's reports. *See Maxwell v. Martin*, No. 14-11-00392-CV, 2012 Tex. App. LEXIS 1069, at *22-23 (Tex. App.—Houston [14th Dist.] Feb. 9, 2012, no pet.) (mem. op.) ("We cannot hold the trial court abused its discretion by determining Dr. Glass adequately demonstrated that Martin's claims have merit despite the purported deficiencies in his report cited by Dr. Maxwell on appeal when Dr. Maxwell did not specifically inform the court of those deficiencies."). Therefore, this objection has been waived. *Bakhtari*, 317 S.W.3d at 493; *Williams*, 264 S.W.3d at 890-91.

Conclusion

We overrule Dr. Scherer's issue on appeal and affirm the trial court's order denying his motion to dismiss.

Judy C. Parker
Justice