# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00387-CV

**Ted Smith, D.O.; and Austin Regional Clinic, P.A., Appellants**

**v.**

**Janet Lynn Wilson, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
## NO. D-1-GN-09-003011, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## O P I N I O N

Appellants Ted Smith, D.O., and Austin Regional Clinic ("ARC") appeal from the denial of their motion to dismiss appellee Janet Lynn Wilson's suit for medical malpractice. We reverse the trial court's order and remand for dismissal and determination of attorney's fees.

### Factual and Procedural Background

On August 6, 2007, Wilson's son, Keith Michael Harris, went to see Dr. Smith, complaining of depression and stress. Harris was twenty-three years old and had recently broken up with his girlfriend. Smith prescribed fluoxetine[1] with twelve refills and did not schedule a follow-up visit. On September 5, 2007, Harris committed suicide.

---

[1] Fluoxetine is the generic name for Prozac, an anti-depressant. We will refer to the drug as fluoxetine except when quoting the record, in which the terms seem to be used interchangeably.

Wilson sued appellants, alleging that Smith was negligent in prescribing fluoxetine and in not scheduling a follow-up visit with Harris, that ARC was vicariously liable as Smith's employer, and that their negligence was a proximate cause of Harris's death. Wilson timely served an expert report by Dr. John T. Maltsberger. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). In his report, Maltsberger stated that the accepted standard of care that should be employed when prescribing fluoxetine required a doctor to obtain a description of the patient's "anxious and depressive symptoms" and a full psychiatric history. He opined that Smith breached that standard of care because he did not "obtain and record" Harris's symptoms of anxiety and depression or his full psychiatric history. Maltsberger stated that there was a generally recognized relationship between fluoxetine and suicide in adolescents and young adults and that "adolescents with psychiatric disorders" had a greater risk of suicidal thoughts and behavior in "the first few months of treatment" when prescribed fluoxetine. Maltsberger concluded by stating, "[I]t is my opinion that more likely than not, had Keith Harris not been prescribed fluoxetine, he would not have committed suicide."

Appellants objected to the report, asserting it was deficient because it was conclusory with regard to causation. Appellants also noted that the report did not mention ARC at all, much less level any criticism against it, and argued that it therefore amounted to no expert report at all as to ARC. The trial court found that Maltsberger's report qualified as a report but was inadequate, denied appellants' motion to dismiss, and gave Wilson thirty days to remedy the report's deficiencies. Wilson filed an amended report providing essentially the same opinions, but adding more detail to the causation paragraph.[2] Maltsberger changed his statements about the relationship between fluoxetine and suicidal

---

[2] The amended report is two and one-half pages long, and the actual summaries of the standard of care, breach, and causation are covered in slightly over one page.

2

thinking and behavior to refer only to adolescents, removing his prior inclusion of "young adults."[3] Maltsberger concluded:

> Based on the information provided to me to date, it is my opinion that Keith Harris was a suicide-vulnerable, depressed young man. As outlined in the studies described above, fluoxetine worsened his depression and agitated this patient, driving him beyond his capacity for endurance. It is my opinion that more likely than not, fluoxetine was a significant cause that worsened the emotional burden of Mr. Harris's illness and that without it he would not have committed suicide.

Appellants filed another motion to dismiss, asserting that the new report was deficient because Maltsberger "never connects the dots and says that based on the history or presentation that existed had Dr. Smith obtained an adequate history, he should not have prescribed Prozac." Appellants further asserted:

> [Maltsberger] never states that based on the information available to Dr. Smith at the time that he was treating Mr. Harris, Dr. Smith should have concluded that Mr. Harris was suicide-vulnerable. As an expert, he is supposed to analyze Dr. Smith's actions based on the information that was available to him at the time. His failure to do so renders his opinions conclusory, and therefore, not adequate.

Appellants also reasserted that because Maltsberger's report made no reference to or criticism of ARC, it did not qualify as an expert report on those claims. The trial court denied appellants' motion to dismiss, and appellants filed this appeal. *See id.* § 51.014(a)(9) (West 2008).

---

[3] This is a noteworthy omission, since Harris, as a twenty-three-year-old man, was not what is generally considered an adolescent. *See Webster's Third New Int'l Dictionary* 28 (2002) (defining adolescence as "the period of life from puberty to maturity terminating legally at the age of majority"); *see also* medical-dictionary.thefreedictionary.com/adolescence (last visited January 5, 2012, citing *Mosby's Med. Dictionary* (2009), *Miller-Keane Encyclopedia & Dictionary of Med., Nursing, & Allied Health* (2003)) (defining adolescence as time between puberty and adulthood, usually running from between eleven and thirteen and between eighteen and twenty).

3

**Analysis**

Within 120 days of the date a plaintiff files a health-care-liability claim, she must serve each physician or health care provider against whom claims are asserted ("medical defendant") with at least one expert report that summarizes the expert's opinions "regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(a), (r)(6). After an expert report is filed, a medical defendant may file an objection to the report's sufficiency and a motion to dismiss the plaintiff's liability claims. *See id.* § 74.351(a), (b).

When the adequacy of a report is challenged, the trial court should only sustain the objections if it determines "that the report does not represent an objective good faith effort to comply with the definition of an expert report." *Id.* § 74.351(*l*); *see American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). The trial court should confine its inquiry to the four corners of the report, which must include the expert's opinion on all three statutory elements and "'must explain the basis of [the expert's] statements to link his conclusions to the facts.'" *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). If the trial court finds a report deficient, the plaintiff's claims against the medical defendant are subject to dismissal unless the court grants "one 30-day extension to the claimant in order to cure the deficiency." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c), (*l*). If an expert report is not timely served, the trial court *must* dismiss the claims against the medical defendant if the defendant files a motion to dismiss. *Id.* § 74.351(b).

4

"A report need not marshal all the plaintiff's proof," but to be considered a good-faith effort to satisfy the statute, it must do more than simply provide the expert's conclusions as to standard of care, breach, and causation. *Palacios*, 46 S.W.3d at 878-79. Instead, the report "must discuss the standard of care, breach, and causation with sufficient specificity to inform the defendant of the conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit." *Id*. at 875. We review a trial court's denial of a motion to dismiss under section 74.351 for an abuse of discretion, but if an expert report contains only conclusions about the statutory elements, the trial court has "no discretion but to conclude . . . that the report does not represent a good-faith effort" to satisfy the statute. *Id.* at 877, 880.

After appellants objected to the sufficiency of Maltsberger's original report, the trial court gave Wilson the opportunity to provide an amended report. The new report, however, added very little to Maltsberger's statements related to Smith's alleged breach of the standard of care and causation, including only one additional paragraph that stated that Harris was "a suicide-vulnerable, depressed young man" and that fluoxetine worsened his depression and led to his suicide.[4] Wilson asserts that this report "provides, in its four corners, that but for prescribing the medication the patient would not have committed suicide." That may be true, but despite Maltsberger's opinion that fluoxetine worsened Harris's mental state and "without it he would not have committed suicide," the report does not explain how taking more complete medical records from Harris would have made

---

[4] Although Wilson alleged in her petition that Smith breached the standard of care by not scheduling a follow-up visit with Harris, neither of Maltsberger's reports discusses follow-up visits or states whether a follow-up should have been scheduled, when such a visit would have been appropriate, or whether it would have made a difference in this case.

Smith aware that fluoxetine would put Harris at risk for suicidal thoughts or action and would have dissuaded Smith from prescribing fluoxetine. In other words, the report does not show how Smith's alleged breach of the standard of care caused the tragic result. *See Taylor v. Fossett*, 320 S.W.3d 570, 577-78 (Tex. App.—Dallas 2010, no pet.) (report did not provide a factual explanation of how doctor's delay in diagnosis or treatment caused complications); *Estorque v. Schafer*, 302 S.W.3d 19, 28-29 (Tex. App.—Fort Worth 2009, no pet.) (expert report left "gaps by not explaining how or why the physicians' failure to consult a urologist or gynecologist caused worsening or progression of Shirley's listed conditions" and did not explain how plaintiff would not have been injured had defendants obtained consults from specialists); *Johnson v. Willens*, 286 S.W.3d 560, 565 (Tex. App.—Beaumont 2009, pet. denied) (report did not explain what "normal dose" would have been, why prescribed dose was excessive, what patient complained of, or what proper treatment would have been); *see also Wright*, 79 S.W.3d at 53 (affirming trial court's determination that report was insufficient because it lacked "information linking the expert's conclusion . . . to Bowie's alleged breach"); *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859-60 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (affirming trial court's finding that report was insufficient because it did not provide any specific information about what defendants should have done or "convincingly tie the alleged departure from the standard of care to specific facts of the case").

Maltsberger's report essentially states that (1) the applicable standard of care required Smith to obtain and record a description of Harris's symptoms and a complete psychiatric history, (2) Smith neglected to get a description of the symptoms or a complete psychiatric history in deciding to prescribe fluoxetine, and (3) fluoxetine worsened Harris's emotional state to the point

6

where he committed suicide. Maltsberger does not, however, provide even the roughest summary of the information Smith should have gleaned from Harris's psychiatric past or symptoms that would have stopped Smith from prescribing fluoxetine or whether Harris's symptoms or history actually contained information that would have indicated that fluoxetine was not an appropriate prescription.[5] He does not provide facts to explain the causal link between Smith's alleged breach and Harris's suicide, one of the required statutory elements of an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (expert report must include "fair summary" of expert's opinion as to "causal relationship" between medical defendant's failure to meet standard of care and injury).

Further, Maltsberger states that studies have shown a relationship between fluoxetine and suicide in adolescents and that fluoxetine increases the risk of suicidal thoughts and behavior in adolescents with psychiatric disorders. He does not, however, state that fluoxetine should never be prescribed to adolescents, nor does he explain whether fluoxetine is always inappropriate for all adolescents, whether some adolescents can safely take it, or, more importantly, whether the findings related to adolescents could even be applied to Harris, who at twenty-three was not an adolescent. Without more, Maltsberger's statement that a correlation exists between fluoxetine and suicide in adolescents does not supply a causal link between the prescribing of fluoxetine and Harris's suicide.

---

[5] Wilson cites to *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486 (Tex. App.—Dallas 2010, no pet.), stating *Bakhtari* is a "strikingly similar case." The expert report in *Bakhtari*, however, provided substantially more information than the report presented here. The *Bakhtari* report explained that the medication in question should only have been prescribed for very short-term use, no refills should have been given, the patient should have been warned of possible side-effects, the doctor should have consulted with or referred the patient to a mental-health professional, and the doctor should have provided or arranged for "on-going assessment and monitoring" of the patient's condition. *Id.* at 496-97 nn.9, 10. Maltsberger's cursory report bears very little similarity to the specificity and explanations provided in the *Bakhtari* report.

To be sure, Maltsberger was not required to provide an exhaustive, lengthy summary of how Smith's omissions caused Harris's suicide or what aspects of Harris's medical records led Maltsberger to conclude that fluoxetine was an inappropriate and dangerous prescription, but he provides literally no summary of such information. We are left with no choice but to conclude that the report does not provide a fair summary of the causal link between Smith's alleged shortcomings and Harris's death. *See Taylor*, 320 S.W.3d at 577-78; *Estorque*, 302 S.W.3d at 28-29; *Johnson*, 286 S.W.3d at 565. Because the report is insufficient as to Smith, it is also insufficient as to ARC, which Wilson sued solely for vicarious liability for Smith's conduct. *See Kettle v. Baylor Med. Ctr.*, 232 S.W.3d 832, 842-43 (Tex. App.—Dallas 2007, pet. denied) (affirming dismissal of suit against professional association due to deficiencies in report about doctor's conduct, stating that whether association was directly or vicariously liable, "liability still depends on conduct" of doctor).

We reverse the trial court's order denying appellants' motion to dismiss. We remand the cause to the trial court for the determination of attorney's fees, *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b), and for entry of a final order dismissing Wilson's claims against appellants.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed: January 11, 2012