# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00765-CV

**Nancy Jo Rodriguez, Appellant**

**v.**

**The Walgreen Company and Sara Elizabeth McGuire, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
### NO. D-1-GN-14-000903, HONORABLE GUS J. STRAUSS, JR., JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Nancy Jo Rodriguez challenges the trial court's order granting appellees' motion to dismiss brought pursuant to section 74.351(b) of the Texas Medical Liability Act (TMLA). *See* Tex. Civ. Prac. & Rem. Code §§ 51.014(a)(10) (authorizing appeal from interlocutory order granting relief sought under section 74.351(*l*) of TMLA), 74.351(*l*) (authorizing court to grant motion challenging adequacy of expert report). Because we conclude that the trial court did not abuse its discretion, we affirm the trial court's order.

## BACKGROUND

Rodriguez sued appellees the Walgreen Company, Inc. and Sara Elizabeth McGuire asserting health care liability claims stemming from Rodriguez's use of the drug Pradaxa.[1]

---

[1] A separate interlocutory appeal from the same underlying proceeding is pending before this Court in cause number 03-14-00717-CV. In that case, Dr. Vivek Goswami, one of Rodriguez's

Rodriguez was a patient with Austin Heart, PLLC and one of her cardiologists was Dr. David Kessler. In her petition, Rodriguez alleges: "Despite Dr. Kessler's orders to discontinue use of the Pradaxa, Walgreens continues to renew the refills and Austin Heart's staff and nurses continue to authorize them"; and, "[a]s a result of her continued use of Pradaxa, [she was] admitted to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding, known side effects of the over-use of Pradaxa"; and she "suffers severe, painful, and life-threatening injuries due to her continued use of Pradaxa." Rodriguez timely served appellees with expert reports and the experts' curriculum vitae. *See id.* § 74.351(a) (requiring claimant asserting health care liability claim as threshold matter to serve expert report with curriculum vitae "for each physician or health care provider against whom a liability claim is asserted"). One of the experts is a licensed pharmacist in the state of Texas, and the other one holds a medical license with a speciality in cardiology.

Appellees objected to the sufficiency of the expert reports and moved to dismiss Rodriguez's claims. *See id.* § 74.351(b) (requiring trial court to dismiss claims on motion of affected health care provider or physician if expert report not served within 120-day window). Appellees challenged the experts' qualifications and asserted that the reports were conclusory and failed to set out the causal connection between any act or failure to act by appellees and Rodriguez's alleged injuries. After the 120 day window expired for Rodriguez to file an expert report, Appellees filed a subsequent motion to dismiss, urging that the reports were completely insufficient such that they constituted "no report at all." *See Scoresby v. Santillan*, 346 S.W.3d 546, 556–57 (Tex. 2011)

cardiologists, and Austin Heart, PLLC appeal the trial court's order denying their motion to dismiss brought pursuant to section 74.351(b) of the TMLA. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b).

(discussing when expert report is "really no report at all" in context of whether trial court should grant extension to allow claimant to cure deficiency in report). Among their arguments, appellees urged that the reports failed to give any factual background concerning the prescription for Pradaxa.

Rodriguez filed a response to appellees' objections and motion to dismiss, but she did not file additional or amended expert reports. After a hearing, the trial court informed the parties by letter that it found that the expert reports as to appellees did not satisfy the requirements of the TMLA. Rodriguez thereafter filed a motion to reconsider the dismissal of her claims against appellees and to permit a thirty-day extension to cure the deficiencies that the trial court found in her reports. *See* Tex. Civ. Prac. & Rem. Code § 74.351(c) (allowing trial court to grant one thirty-day extension to cure deficiencies in expert report). Appellees filed a response to the motion to reconsider, opposing an extension to cure and arguing that an extension was not justified. The trial court thereafter signed its order granting appellees' motion to dismiss. This appeal followed.

**ANALYSIS**

*Chapter 74 Expert Report Requirements*

Section 74.351 of the TMLA provides a 120-day window for a claimant, who is asserting a health care liability claim, to serve each defendant physician and health care provider with an expert report with the expert's curriculum vitae. *See id.* § 74.351(a). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby*, 346 S.W.3d at 554. "A valid expert report has three elements: it must fairly summarize the applicable standard of care; it must explain how a physician or health care provider failed to meet that standard; and it must establish the causal relationship between the failure and the harm alleged."

3

*Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 630 (Tex. 2013) (citing Tex. Civ. Prac. & Rem. Code § 74.351(r)(6)).[2]

On the motion of an affected defendant physician or health care provider, the trial court must dismiss the case if the claimant fails to serve an expert report within the 120-day window. Tex. Civ. Prac. & Rem. Code § 74.351(b). If the claimant timely files an expert report, a trial court should not grant a motion challenging the report's adequacy unless "it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). The Texas Supreme Court has defined "a 'good faith effort' as one that provides information sufficient to (1) 'inform the defendant of the specific conduct the plaintiff has called into question,' and (2) 'provide a basis for the trial court to conclude that the claims have merit.'" *Jelinek v. Casas*, 328 S.W.3d 526, 539 (Tex. 2010) (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001))).[3]

---

[2] Section 74.351(r)(6) of the Texas Medical Liability Act (TMLA) defines an expert report to mean:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

Tex. Civ. Prac. & Rem. Code § 74.351(r)(6).

[3] The trial court also may grant one thirty-day extension to the claimant to cure a deficiency in a timely-filed expert report. *Id*. § 74.351(c). Rodriguez, however, has not briefed or otherwise requested that this Court remand the case for the purpose of allowing her the opportunity to cure deficiencies in the expert reports.

4

To determine whether an expert report complies with section 74.351, courts consider the information "found within the four corners of the expert report, which need not 'marshall all the plaintiff's proof' but must include the expert's opinion on each of the three main elements: standard of care, breach, and causation." *Id.* The "'report cannot merely state the expert's conclusions about these elements,' but 'the expert must explain the basis of his statements to link his conclusions to the facts.'" *Id.* (quoting *Wright*, 79 S.W.3d at 52 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999))); *see Shenoy v. Jean*, No. 01-10-01116-CV, 2011 Tex. App. LEXIS 10212, at *16 (Tex. App.—Houston [1st Dist.] Dec. 29, 2011, pet. denied) (mem. op.) (noting that "an expert report that merely asserts that a defendant physician's breach caused the plaintiff's injury without providing a factual basis does not provide the trial court with the information necessary to evaluate the merits of the plaintiff's claim"). "This requirement precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (citing *Wright*, 79 S.W.3d at 53; *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 859 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).

We review a trial court's denial of a motion to dismiss brought under section 74.351(b) for an abuse of discretion. *TTHR Ltd. P'ship v. Moreno*, 401 S.W.3d 41, 44 (Tex. 2013) (citing *Palacios*, 46 S.W.3d at 877). "Under that standard, appellate courts defer to the trial court's factual determinations if they are supported by evidence, but review its legal determinations de novo." *Van Ness v. ETMC First Physicians*, 461 S.W.3d 140, 142 (Tex. 2015). "A trial court abuses its discretion if it rules without reference to guiding rules and principles." *Id*. With these standards in mind, we turn to Rodriguez's issues.

*Adequacy of Expert Report*s

Rodriguez raises two appellate issues. She argues that her expert who is a pharmacist was qualified to give an opinion on appellees' breach of the applicable standard of care and that the expert reports "when considered in the aggregate" are sufficient because they apprise appellees of the claims against them and inform the court that the claims are not frivolous. *See* Tex. Civ. Prac. & Rem. Code § 74.351(i) (allowing claimant to satisfy expert report requirement "by serving reports of separate experts . . . regarding different issues arising from conduct of physician or health care provider, such as issues of liability and causation"); *Mitchell v. Satyu*, No. 05-14-00479-CV, 2015 Tex. App. LEXIS 6127, *12 n.3 (Tex. App.—Dallas June 17, 2015, no pet.) (mem. op.) (noting that expert report requirement may be satisfied by utilizing more than one expert report and that "court may read the reports together"). Rodriguez argues that, "when these reports are read in the aggregate, they apprise Walgreens and McGuire of the specific conduct called into question by Rodriguez's claims and demonstrate that Rodriguez's claims have merit." Rodriguez, however, concedes that her expert who is a pharmacist is not qualified to opine on causation because he is not a medical doctor. *See* Tex. Civ. Prac. & Rem. Code §§ 74.351(r)(5)(C) (limiting "expert" with respect to opinion testimony about causation to "physician who is otherwise qualified to render opinions on such causal relationships under the Texas Rules of Evidence"), .403(a) (generally requiring expert on causation to be physician).

Appellees argue that the trial court did not abuse its discretion by dismissing Rodriguez's claims against appellees. Among their arguments, they contend that the experts' opinions are speculative and conclusory, that they fail to provide a factual basis for their opinions,

6

that the physician's report does not mention appellees but is directed to the conduct of Rodriguez's cardiologist, and that the physician's report "does not bridge the gaps" in the pharmacist's report. We turn then to review the information "found within the four corners" of the expert reports to determine whether the trial court abused its discretion in granting appellees' motion to dismiss. *See Jelinek*, 328 S.W.3d at 539.

In his report, the pharmacist lists the records that he reviewed to form his opinions and concludes that appellees did not meet the applicable standards of care.[4] He opines in relevant part:

Standards of Care

The standard of care required to fill Ms. Rodriguez's dabigatran etexilate (PRADAXA) prescription are as follows:

- Pharmacists have a duty to contact the prescribing physician if patient harm is possible to validate the prescription

- Pharmacists are responsible for ensuring a prescription is accurately communicated and dispensed as intended by the prescriber

- Pharmacists are responsible for communicating with the prescribing physician to validate continuation of therapy when no refills remain on a prescription

Breach of Standard of Care

Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD breached the applicable standards of care. Specifically, Walgreens,

---

[4] The pharmacist also opines on causation but, as previously noted, Rodriguez concedes that the pharmacist was not qualified to opine on that issue. *See* Tex. Civ. Prac. & Rem. Code §§ 74.351(r)(5)(C), .403(a).

7

Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD conduct fell below the standard of care by:

- Continuing to dispense a prescription for dabigatran etexilate (PRADAXA) after the prescribing physician indicated it should be discontinued; and

- Failing to verify if the prescription for dabigatran etexilate (PRADAXA) should be continued with the prescribing physician

Walgreens, Sara Elizabeth McGuire (pharmacist), and pharmacist with initials MDD should have provided Ms. Rodriguez with the care and treatment in the standard of care paragraph above. However, this expected care was not provided to Ms. Rodriguez as set forth in the preceding paragraph.

To satisfy the statutory elements of standard of care and breach, Rodriguez relies on the pharmacist's opinion that appellees' conduct fell below the standard of care by "continuing to dispense" the prescription for Pradaxa "after the prescribing physician indicated it should be discontinued" and by failing to verify if the prescription "should be continued with the prescribing physician." *See Jelinek*, 328 S.W.3d at 539 (requiring expert report on standard of care, breach, and causation).

In his report, the physician describes his qualifications and the records that he reviewed to form his opinions, and then opines:

> In my opinion the care and treatment provided to Nancy Jo Rodriguez by Austin Heart fell below the accepted standards of care in the following particulars: Despite Dr. David Kessler, one of her cardiologists from Austin Heart, requesting that the Pradaxa be discontinued (in this patient who, at best, has bipolar disorder and at times was confused, this was a reasonable request), Pradaxa therapy nevertheless was continued after her acute hospitalization. This request to stop the medication was not appreciated by her primary cardiologist, Dr. Vivek Goswami (who was in the same group as Dr. Kessler). Furthermore, Ms. Rodriguez appeared to be obtaining refills for this medication authorized by nurses and staff of this same heart group who recommended discontinuing this medication (Austin Heart). The standard of care would have been to follow the orders of Dr. Kessler to stop the administration of Pradaxa.

8

> Failure to discontinue the use of Pradaxa was a direct cause of her subsequent acute admission to the hospital with hypotension, acute kidney injury and apparent gastrointestinal bleeding—known side effects of the over-use of Pradaxa. Ms. Rodriguez's entire hospitalization was attributable to the failure to stop Pradaxa therapy as ordered by Dr. Kessler. More likely than not, had the Pradaxa medication been discontinued as requested, Ms. Rodriguez's hospitalization would never have needed to take place.
>
> I hold these opinions to a reasonable degree of medical certainty. They are based upon my education, training and experience as well as the records which I have reviewed.

To satisfy the statutory element of causation, Rodriguez relies on the physician's opinion that Rodriguez's continued use of Pradaxa caused her hospitalization.

Both reports, however, fail to include underlying facts to support the experts' opinions, such as the factual background concerning Rodriguez's prescription for Pradaxa and refills on the prescription. *Compare Gray*, 189 S.W.3d at 859–60 (upholding dismissal of claims against medical center and doctor based on inadequate expert report and noting that conclusory statements do not satisfy requirements of section 74.351), *with Van Ness*, 461 S.W.3d at 142–44 (reciting facts contained in expert report and concluding that trial court did not abuse discretion "by determining that report was not conclusory" and that it was "good faith effort to comply with the TMLA's requirements"); *Bakhtari v. Estate of Dumas*, 317 S.W.3d 486, 496–99 (Tex. App.—Dallas 2010, no pet.) (affirming trial court's denial of motion to dismiss claims that alleged doctor negligently prescribed drug and describing specific facts contained in expert report that addressed standard of care, breach, and causation).

9

For example, Rodriguez argues that appellees should have contacted her physicians so that appellees would have been aware that her prescription was discontinued. The physician's only statement in his report about prescription refills for Pradaxa, however, does not support this argument. The physician asserted in his report that "Ms. Rodriguez appeared to be obtaining refills for this medication authorized by nurses and staff of this same heart group." He further stated that the "request to stop the medication was not appreciated by" Rodriguez's primary cardiologist. Missing from the report is how or when appellees would have become aware of the alleged request to stop the medication even if they had contacted the prescribing physician, given the expert's assertion that refills were authorized by the heart group and the lack of information about when the request to stop was made or how or when the primary cardiologist should have "appreciated" the request. "[N]either the trial court nor this Court may infer additional opinions or underlying facts to fill in gaps that the report itself leaves open." *Hebert v. Hopkins*, 395 S.W.3d 884, 890 (Tex. App.—Austin 2013, no pet.) (citing *Wright*, 79 S.W.3d at 53); *see Smith v. Wilson*, 368 S.W.3d 574, 577 (Tex. App.—Austin 2012, no pet.) (noting that trial court should confine inquiry to four corners of expert report when adequacy of report challenged and that report must link conclusions to facts); *Webb*, 228 S.W.3d at 279 (precluding "court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended").

Further, the physician's report—the only report addressing causation—does not mention appellees by name or position and does not otherwise "implicate" appellees. *See Haskell v. Seven Acres Jewish Senior Care Servs., Inc.*, 363 S.W.3d 754, 760–61 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding that report that only named nurse as intended recipient of report

10

was "not a report as to" nurse); *Fung v. Fischer*, 365 S.W.3d 507, 529–30 (Tex. App.—Austin 2012, no pet.) (noting that "defendant may be 'implicated' in a report even if the defendant is not specifically named" but concluding that expert report did not "implicate" and was "no report" as to primary care physician), *overruled in part on other grounds by Potts*, 392 S.W.3d 625; *Rivenes v. Holden*, 257 S.W.3d 332, 338–39 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (concluding that expert report that did not refer to doctor by name or position and did not offer an opinion as to doctor's conduct was not report as to doctor). Thus, the trial court would not have abused its discretion by finding that the report fails to establish a "causal relationship" between an alleged breach by appellees and Rodriguez's harm. *See Potts*, 392 S.W.3d at 630; *see also Jelinek*, 328 S.W.3d at 539–40 (requiring that "expert must go further and explain, to a reasonable degree, how and why the breach caused the injury based on the facts presented"); *Mitchell*, 2015 Tex. App. LEXIS 6127, at *10 (explaining that "causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm, and that, absent this act or omission, the harm would not have occurred").

Without factual background concerning the prescription such as the inclusion of underlying facts to link appellees' conduct to Rodriguez's harm, the expert reports fail to provide a basis to conclude that Rodriguez's claims have merit. *See Jelinek*, 328 S.W.3d at 539. Thus, we conclude that the trial court did not abuse its discretion when it granted appellees' motion to dismiss. *See Moreno*, 401 S.W.3d at 44.

11

## CONCLUSION

For these reasons, we overrule Rodriguez's issues and affirm the trial court's order granting appellees' motion to dismiss.

_____

Melissa Goodwin, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   January 27, 2016

12