# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00835-CV

---

**Farrah Agahi, D.M.D; Scott Law Ortho Corp., P.C.; and Julie Avalos, Appellants**

**v.**

**Jeffrey Flynt, Appellee**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-24-001469, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this interlocutory appeal, Farrah Agahi, D.M.D.; Scott Law Ortho Corp., P.C. (Scott Law); and Julie Avalos contend that the trial court abused its discretion in denying their motion to dismiss Jeffrey Flynt's health-care-liability claim (HCLC) for failure to file an expert report. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b); *see also id.* § 51.014(a)(9) (authorizing interlocutory appeal from order that denies all or part of relief sought by motion under Section 74.351(b)). For the following reasons, we reverse the order denying appellants' motion to dismiss and remand for dismissal and a determination of attorneys' fees.

**BACKGROUND**

Flynt, appearing pro se below, filed an original petition alleging HCLCs against appellants arising from the provision of orthodontic treatment.[1]  Flynt alleges that on or about January 25, 2022, he was seen by Agahi for "the continuation of orthodontic treatment" and that Agahi "placed an orthodontic bracket to [his] tooth and instructed Defendant Avalos [a dental assistant] to secure it before leaving the room."  Flynt alleges that Avalos "incorrectly positioned the arch wires and used excessive force to position it, causing [Flynt] pain and discomfort," and that Agahi "did not return to check the proper placement of the arch wires or coils."

Flynt alleges that nearly two months later, on or about March 19, 2022, he noticed that "the arch wire had broken and coils [were] missing inside his mouth."  He went to the emergency room, where it was discovered that three orthodontic components—a "broken arch wire approximately one inch long and two coil springs"—had entered his digestive system, posing a significant risk of gastrointestinal tract perforation.  Flynt alleges that he was admitted to the hospital and remained under care until March 21, 2022, during which time he required continuous surveillance to ensure that the foreign bodies passed through his digestive system without causing further harm.  He alleges negligence by appellants that caused him physical pain and suffering, medical expenses, loss of earnings, and emotional distress.

He timely served on appellants an expert report signed by Leo Shushner, D.D.S., accompanied by Shushner's curriculum vitae (CV).  *See* Tex. Civ. Prac. & Rem. Code § 74.351(a) (requiring claimant asserting HCLC to serve expert report on each defendant within 120 days of defendant's answer); *see also id.* § 74.351(r)(6) (setting out requirements of expert report).  The relevant portions of Shushner's expert report include the following:

---

[1] Flynt has not filed an appellee's brief.

Mr. Flynt was seen briefly by . . . Dr. Farrah[2] . . . to position four orthodontic brackets onto the lower teeth. Dr. Farrah stayed for the positioning of the brackets and then left the operatory.

The dental assistant bonded the brackets on the teeth. The dental assistant then proceeded to place the arch wires and two coil springs into the brackets, prior to securing and activating the appliances. Dr. Farrah did not return to make sure the brackets, arch wires and coil springs were properly placed or that the appliances were properly activated. On March 19, 2022 Mr. Flynt noticed the upper arch wire and coil springs missing from the upper left area of his mouth. Unable to find the missing components, Mr. Flynt went to the emergency room at Baylor Scott & White Hospital. That evening Anthony Panela Dumpit, MD diagnosed the presence of a foreign body in Mr. Flynt's stomach. The foreign body consisted of three separate orthodontic components, a broken arch wire approximately one inch long and two coil springs. This presented a risk for gastrointestinal tract perforation. Ongoing surveillance was carried out at Baylor Scott & White Hospital until the foreign bodies safely cleared Mr. Flynt's digestive tract on March 31, 2022.

[listing the records upon which his findings and opinions are based]

Standard of Care

The Standard of Care maintains that the dentist has an obligation to refrain from harming the patient. The dentist is also obligated to do whatever is necessary to maintain the health and welfare of the patient.

---

[2] In the expert report, Shushner refers initially to Agahi as "Farrah Agahi, DMD, (Dr. Farrah)," and thus his subsequent references to her are to her first name rather than to her last name. We refer to her in this opinion as Agahi.

Deviations from the Standard of Care

Dr. Farrah and Smile Doctors[3] deviated from the Standard of Care in their treatment of Mr. Flynt in the following, but not limited to, ways:

1. Delegating the final placement and adjustment of an orthodontic appliance to a dental assistant.

2. Utilizing a dental assistant who lacked the skill, knowledge and experience necessary to safely place, adjust and activate a permanent orthodontic appliance[.]

3. Not checking the placement, adjustment and activation of a permanent orthodontic appliance prior to exiting the patient.

Proximate Causation

As a result of the above deviations from The Standard of Care by Dr. Farrah and Smile Doctors, Jeffrey Flynt suffered great harm, including but not limited to:

1. The dislodgement, swallowing and ingestion of three orthodontic components

2. A sore painful throat along with right side abdominal pain

3. Two nights in the Baylor Scott & White Hospital on an emergency basis for surveillance and pain management

---

[3] In his original petition, Flynt named as one of the defendants "Scott Law Ortho Corp., P.C. d/b/a Smile Doctors." In its original answer, Scott Law asserted that it had been "incorrectly named as 'Scott Law Ortho Corp., P.C. d/b/a Smile Doctors.'" Thereafter, in the style of Flynt's subsequent court filings and in the style of the court's order at issue, the "d/b/a Smile Doctors" no longer appears after "Scott Law Ortho Corp., P.C." As an exhibit to his Opposition to Defendants' Objections and Motion to Dismiss, Flynt attached a copy of an Assumed Name Certificate filed with the Texas Secretary of State indicating that Scott Law's assumed name is "Dr. Farrah Ortho powered by Smile Doctors." Flynt's claims against Scott Law were solely for vicarious liability arising from Agahi's actions and omissions.

4

> 4. Thirteen days of outpatient surveillance at Baylor Scott & White Hospital to monitor the safe passage of the three components from Mr. Flynt's gastrointestinal tract
>
> A copy of my Curriculum Vitae is attached to this report. I hold the above stated findings and opinions to a greater degree of medical certainty. I reserve the right to amend, modify or change my opinion(s), if additional information becomes available.

Shushner's CV stated in relevant part that he is a "licensed periodontist with over 40 years of clinical experience in periodontics and implant dentistry"; has been a "clinical faculty" member at Nova Southeastern University College of Dental Medicine in Fort Lauderdale, Florida, since 2014; has been "partner in a private dental practice for over 35 years"; and has provided "dental expert witness services" to the legal profession in over 400 cases. He holds a Certification in Dentistry and a Certification in Periodontics. His CV does not mention any certifications, experience, or training in orthodontia.

Appellants filed objections to the expert report and a joint motion to dismiss, arguing that (1) the report fails to identify the standard of care applicable to any of the defendants, (2) the statements contained within the report are conclusory, (3) Shushner is not qualified to opine regarding the statutory expert-report requirements, and (4) the report fails to name all of the defendants. *See id.* § 74.351(b)–(c) (requiring court to dismiss HCLC with prejudice for failure to timely file expert report and including in definition of failure any "deficient" elements required by Subsection (r)(6)), (*l*) (requiring court to grant motion challenging adequacy of expert report if report does not represent "objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)"). After a hearing, the trial

court overruled appellants' objections and denied their motion to dismiss. Appellants perfected this interlocutory appeal.

## DISCUSSION

Chapter 74 of the Civil Practice and Remedies Code, also known as the Texas Medical Liability Act (TMLA), requires HCLC claimants to serve upon each defendant, not later than 120 days after that defendant's answer is filed, an expert report that is a good-faith effort to provide a "fair summary" of the expert's opinion. *Id.* § 74.351(a), (r)(6); *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam). The report must include the expert's opinion on the "applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). After an expert report is filed, the defendant may object to the sufficiency of the report and move to dismiss the plaintiff's claims. *See id.* § 74.351(a), (b). The trial court must dismiss the cause of action against the health-care provider if the plaintiff fails to serve an expert report that satisfies the requirements of the TMLA. *See id.* § 74.351(b).

When a party challenges the adequacy of an expert report, the trial court should sustain the objection only if it determines that the report does not represent an "objective good faith effort to comply with the definition of an expert report." *Id.* § 74.351(*l*). To constitute a good-faith effort, the report must inform the defendant of the specific conduct called into question and provide a basis for the trial court to determine whether the claims have merit. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). A report does not fulfill these purposes if it fails to address the standard of care, breach of the

6

standard of care, and causation, or if it merely states the expert's conclusions regarding these elements. *Id.* The expert must link his conclusions to the facts of the case. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We review a trial court's denial of a motion to dismiss under Section 74.351 under an abuse-of-discretion standard. *Palacios*, 46 S.W.3d at 878. However, "if an expert report contains only conclusions about the statutory elements, the trial court has 'no discretion but to conclude . . . that the report does not represent a good-faith effort' to satisfy the statute." *Smith v. Wilson*, 368 S.W.3d 574, 577 (Tex. App.—Austin 2012, no pet.) (quoting *Palacios*, 46 S.W.3d at 877, 880). To perform its review, the trial court must look only to the four corners of the report itself. *Palacios*, 46 S.W.3d at 878. No particular words or formality are required in the expert report, and the claimant need not marshal all his proof, but the report must contain more than bare conclusions and must address all the statutory elements without the necessity of supplying omissions by inference. *See Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011).

In one issue, appellants contend that the trial court abused its discretion in determining that the expert report meets the requirements of Section 74.351 and in denying their motion to dismiss for the same four reasons they objected to the report: (1) the report fails to state the applicable standard of care; (2) Shushner's opinion as standard of care, breach, and causation are conclusory; (3) Shushner is not qualified to opine regarding the applicable standard of care, how the standard of care was allegedly not met, and causation; and (4) the report fails to name all defendants.

We agree with appellant's related first and second arguments: that the expert report is merely conclusory and thus inadequate on the issues of standard of care, breach, and causation. An expert report must provide more than conclusory statements concerning the

applicable standard of care, breach, and causation. *See Baty v. Futrell*, 543 S.W.3d 689, 693 (Tex. 2018). Specifically regarding causation, while a report need not use magic words like "proximately caused," it must explain "how and why the breach caused the injury based on the facts presented." *Jelinek v. Casas*, 328 S.W.3d 526, 539–40 (Tex. 2010). The necessary information must be found in the text of the report itself; omissions cannot be supplied by inference. *Hall v. Davies*, 598 S.W.3d 803, 807 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Scoresby*, 346 S.W.3d at 555–56); *Popeney v. Causey*, No. 09-11-00649-CV, 2012 WL 2849274, at *2 (Tex. App.—Beaumont July 12, 2012, no pet.) (mem. op.) ("A reviewing court cannot fill gaps in a report by drawing inferences.").

The report must demonstrate causation beyond mere conjecture, and a causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent this act or omission, the harm would not have occurred. *Popeney*, 2012 WL 2849274, at *2. Because bare conclusions are not enough, a report must "'explain, factually, how proximate cause is going to be proven,'" although "it need not prove the entire case or account for every known fact." *Abshire*, 563 S.W.3d at 224 (quoting *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017)). The expert report "must include sufficient detail" regarding how the breach caused the plaintiff's injuries "to allow the trial court to determine if the claim has merit." *Jelinek*, 328 S.W.3d at 540. Neither the trial court nor this Court may infer additional opinions or underlying facts to fill in gaps that the report itself leaves open. *Hebert v. Hopkins*, 395 S.W.3d 884, 890 (Tex. App.—Austin 2013, no pet.); *see Austin Heart, P.A. v. Webb*, 228 S.W.3d 276, 279 (Tex. App.—Austin 2007, no pet.) (noting that court is "preclude[ed] from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended").

8

As to breach, the report opines that Agahi (1) delegated the placement, adjustment, and activation of the subject orthodontic appliances to an unqualified (and unnamed) dental assistant and (2) failed to check the assistant's work. Significantly, however, the report identifies no breach by the assistant.[4] And because the assistant is the party who allegedly placed, adjusted, and activated the orthodontic components, the report's failure to identify any wrongdoing on the part of the assistant results in a corresponding failure to implicate Agahi's conduct for the purpose of causation.

Paraphrasing the portions of Shushner's report that arguably touch on causation, in totality he opines the following: (1) Agahi delegated the final placement, adjustment, and activation of the subject orthodontic appliance to an unqualified dental assistant who lacked the "skill, knowledge and experience necessary to safely place, adjust and activate a permanent orthodontic appliance"; (2) Agahi did not check the assistant's work; and (3) due to the foregoing actions and omissions, three components of the subject orthodontic appliance became "dislodged" and were swallowed and ingested by Flynt. However, as already noted, these statements do not implicate the assistant's work itself—such as that she in fact improperly or incorrectly positioned, adjusted, or activated the components. Rather, to implicate the assistant's actions would require us to draw an inference, which we cannot do. *See Hebert*, 395 S.W.3d at 890. More importantly, even were we to infer that Shushner is opining that the assistant's actions were somehow improper, Shushner's statements do not factually identify *what* such presumably improper positioning, adjustment, or activation entailed in this case. For instance, was the alleged negligent act too much tightening of the wires, too little tightening, using the

_____

[4] In contrast, Flynt alleges in his petition that the assistant, who he identifies, "incorrectly positioned the arch wires and used excessive force to position it."

9

wrong wire gauge or springs of the improper specifications, misplacing or using the incorrect brackets, or something else altogether? It is impossible to identify the alleged, specific wrongful act(s) from Shushner's report.

Moreover, the portion of the expert report titled "Standard of Care" is nothing more than a generic iteration of the Hippocratic oath that a physician "do no harm." Beyond that generality, it does not specify the standard of care to which an orthodontist is held when positioning, adjusting, and activating orthodontic appliances—the actions that allegedly caused Flynt's injuries—and it does not recite any standard of care at all applicable to a dental assistant. It is thus deficient as to the standard of care. *See Abshire*, 563 S.W.3d at 226 ("To adequately identify the standard of care, an expert report must set forth 'specific information about what the defendant should have done differently.'") (quoting *Palacios*, 46 S.W.3d at 880)). "While the [TMLA] requires only a 'fair summary' of the standard of care and how it was breached, 'even a fair summary must set out what care was expected, but not given.'" *Id.* (quoting *Palacios*, 46 S.W.3d at 880).

A fair reading of the expert report on the issues of standard of care, breach, and causation would require a court to infer from the gaps in the factual recitations that what Shushner meant to say was that (1) the dental assistant incorrectly executed her job, (2) Agahi should have checked the assistant's work, and (3) had Agahi checked the assistant's work, the error(s) would have been corrected and the harm caused by the dislodgement averted. But even that inference would leave open the larger gap of what in fact the dental assistant allegedly did incorrectly—and what Agahi necessarily did as well, presumably by her failure to check the assistant's work. The statute and the caselaw applying it require more, and we may not by inference fill the missing factual gaps within the report, which must within its four corners

10

"include sufficient detail" regarding how the breach caused the plaintiff's injuries. *See Jelinek*, 328 S.W.3d at 540; *Hebert*, 395 S.W.3d at 890.

The expert report at issue wholly fails to provide sufficient detail regarding the alleged breach and how it caused Flynt's injuries. *See Austin Heart, P.A.*, 228 S.W.3d at 279 ("A report cannot merely state the expert's conclusions about the statutory elements [but] . . . 'must explain the basis of his statements to link his conclusions to the facts.'" (quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002))). Instead, the report merely identifies the generic cause of Flynt's injuries—dislodgement of some orthodontic components—without explaining who caused it or how. *See Bogar v. Esparza*, 257 S.W.3d 354, 364 (Tex. App.—Austin 2008, no pet.) ("In essence, Dr. Adame's report is a second autopsy report, opining about the cause of Ms. Guerrero's death without explaining who caused it or how."); *Sherman v. Austin State Hosp.*, No. 03-05-00296-CV, 2006 WL 305300, at *1 (Tex. App.—Austin 2006, pet. denied) (mem. op.) ("A report finding only the cause of the death does not satisfy the statutory requirements."), *cert. denied*, 549 U.S. 1133 (2007). "An expert's simple *ipse dixit* is insufficient to establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

This Court has consistently required more than what Shushner has provided in terms of expert testimony on causation in the context of Section 74.351. *See, e.g.*, *Kocurek v. Colby*, No. 03-13-00057-CV, 2014 WL 4179454, at *5 (Tex. App.—Austin Aug. 22, 2014, no pet.) (mem. op.) ("To find Devere's report sufficient on causation, we would have to make inferences from beyond the four corners of his report; this we are not allowed to do."); *Smith v. Wilson*, 368 S.W.3d 574, 579 (Tex. App.—Austin 2012, no pet.) (while noting that expert was

not required to provide "exhaustive, lengthy summary" of how doctor's alleged omissions caused patient's suicide, report that provided "literally no summary of such information" did not constitute fair summary of causal link between alleged shortcomings and patient's death); *Constancio v. Bray*, 266 S.W.3d 149, 157–58 (Tex. App.—Austin 2008, no pet.) (holding that expert report that alleged that breach of standard of care by doctor caused patient's death was insufficient when report did not explain how increased monitoring of patient, detection of hypoxemia, and other actions would have prevented patient's death); *Perez v. Daughters of Charity Health Servs. of Austin*, No. 03-08-00200-CV, 2008 WL 4531558, at *4 (Tex. App.—Austin Oct. 10, 2008, no pet.) (mem. op.) (concluding that expert report was insufficient on causation and not good-faith effort because it did not link hospital's actions to patient's death and did not identify any specific injury that would have been prevented had hospital complied with standard of care).

Because the report fails entirely to implicate the conduct of the dental assistant as the cause of Flynt's injuries—and similarly fails to implicate Agahi's and Scott Ortho's conduct, as their alleged liability hinges directly on the assistant's conduct—the report is not only deficient but is, in effect, no report at all as to any of the defendants. *See Bogar*, 257 S.W.3d at 368–69 ("[T]he report entirely fails to implicate Dr. Bogar's conduct—if any person's conduct. The report is simply silent regarding how the overdose occurred and who, if anyone, was responsible for it."); *Fung v. Fischer*, 365 S.W.3d 507, 529, 536 (Tex. App.—Austin 2012, no pet.) (holding that where report failed to provide any information about primary care physician's standard of care, any alleged breach of standard of care by him, and any causal link between alleged breach and injury, report did not implicate physician and was "no report"); *see also Garcia v. Marichalar*, 198 S.W.3d 250, 254 (Tex. App.—San Antonio 2006, no pet.) (holding

that report that referenced acts of other defendants but did not mention one defendant at all did not constitute good-faith effort to comply with statutory requirements as to that defendant). This Court has determined that when a report is so deficient as to effectively constitute no report at all, the proper disposition is to reverse the order denying the motion to dismiss and remand to the trial court for a determination of the amount of attorney's fees to which the defendants are entitled and entry of an order dismissing the plaintiff's claims.[5] *See Kocurek*, 2014 WL 4179454, at \*5; *Smith*, 368 S.W.3d at 579; *Bogar*, 257 S.W.3d at 373; *see also* Tex. Civ. Prac. & Rem. Code § 74.351(b) (requiring trial court to dismiss claim with prejudice and award reasonable attorney's fees and costs to physician if no expert report is timely filed).

## CONCLUSION

We reverse the trial court's order denying appellants' Section 74.351 motion to dismiss. We remand the cause to the trial court for a determination of attorneys' fees, *see* Tex. Civ. Prac. & Rem. Code § 74.351(b), and for entry of a final order dismissing Flynt's claims against appellants.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Reversed and Remanded

Filed: June 27, 2025

---

[5] Because we have sustained appellants' sole issue on the basis of their related first and second arguments, we need not reach their third and fourth arguments, respectively, that Shushner was not qualified and that his report fails to name all defendants. *See* Tex. R. App. P. 47.1, 47.4.