

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-26-00004-CV
_____

RAJESH NAMBIAR, M.D., APPELLANT

V.

CHRIS PUMPHREY, APPELLEE

On Appeal from the 47th District Court
Potter County, Texas
Trial Court No. 112714-A-CV, Honorable Dee Johnson, Presiding

May 27, 2026

## MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Rajesh Nambiar, M.D., appeals the trial court's order denying his motion to dismiss and objections to the Chapter 74 expert report served by appellee Chris Pumphrey.  We reverse and render.

## BACKGROUND

Pumphrey filed this medical malpractice case in February of 2025 alleging that Dr. Nambiar left a catheter wire inside Pumphrey following a laser ablation procedure,

breaching the applicable standard of care. As required by Chapter 74 of the Texas Civil Practice and Remedies Code, Pumphrey served an expert report, which was prepared by Daniel E. Miga, M.D. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). Dr. Nambiar timely filed his objections to the sufficiency of the report on March 18, 2025. He then filed a motion to dismiss on July 15, 2025. A hearing on Dr. Nambiar's objections and motion to dismiss was held on November 21, 2025. Following the hearing, the trial court signed an order overruling the objections and denying the motion. It is from this order that Dr. Nambiar brings this interlocutory appeal.[1] *See id.* § 51.014(a)(9) (authorizing interlocutory appeal from order denying all or part of motion to dismiss filed under § 74.351(b)).

## ANALYSIS

Applicable Law

A claimant bringing a healthcare liability claim must timely provide each defendant healthcare provider with an expert report. *Id*. § 74.351(a). The goal of section 74.351 is to "deter frivolous lawsuits by requiring a claimant early in litigation to produce the opinion of a suitable expert that his claim has merit." *Columbia Valley Healthcare Sys., L.P. v. Zamarripa*, 526 S.W.3d 453, 460 (Tex. 2017) (internal quotation marks omitted); *see also Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013) (expert report requirement is "a threshold mechanism to dispose of claims lacking merit . . .").

---

[1] Pumphrey served Dr. Nambiar with a Supplemental Expert Report on December 19, 2025. We will not consider the supplemental report in our analysis as it was not before the trial court.

2

An expert report is a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). In setting out the expert's opinions, the report must inform the defendant of the specific conduct the plaintiff has called into question as well as provide a basis for the trial court to conclude that the claims have merit. *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011). A report that merely states the expert's conclusions as to the standard of care, breach, and causation does not fulfill these purposes. *Am. Trans. Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). The expert "must explain the basis of his statements to link his conclusions to the facts." *Columbia Valley*, 526 S.W.3d at 460–61 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). If a plaintiff does not timely serve an expert report meeting the required elements, the trial court must dismiss the healthcare claim on motion of the affected healthcare provider. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b), (l); *Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 (Tex. 2017) (per curiam). The trial court shall grant a motion challenging the adequacy of an expert report only if it appears to the court that the report "does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (6)." TEX. CIV. PRAC. & REM. CODE § 74.351(l); *Strom v. Mem'l Hermann Hosp. Sys.*, 110 S.W.3d 216, 221 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

We review a trial court's decision to grant or deny a motion to dismiss a healthcare liability claim under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 875. We

3

apply the same standard when reviewing a trial court's determination as to whether an expert is qualified. *See Broders v. Heise*, 924 S.W.2d 148, 151–52 (Tex. 1996). When reviewing matters within a trial court's discretion, an appellate court may not substitute its judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would have. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). Rather, the test for abuse of discretion is "whether the trial court acted without reference to any guiding rules or principles." *Id.*

Sufficiency of the Expert Report

By his first issue, Dr. Nambiar asserts that Dr. Miga's report is insufficient and constitutes "no report" as a matter of law. He contends that Dr. Miga's report fails to identify the applicable standard of care, fails to allege how that standard was breached, and contains no opinions regarding causation.

In his expert report, Dr. Miga summarized the care received by Pumphrey related to his left thigh endovascular laser ablation performed by Dr. Nambiar in August of 2023. Dr. Miga noted that Pumphrey experienced "persistent left upper thigh pain and a bruise" following the procedure. Then, on September 10, 2024, Pumphrey "was massaging the bruised area when he suddenly felt a sharp metal object poke through the skin." Pumphrey contacted Dr. Nambiar's office, and "[a] retained wire was removed by the vein clinic staff." Pumphrey then sought care from another physician, and an additional retained wire fragment was removed on October 1, 2024.

4

Dr. Miga opined, "Transcatheter intravascular procedures such as venous ablations are commonplace in the medical field. Guidewire retention after intravascular insertion is a known complication of these procedures. [. . .] Guidewire retention is considered a 'never event.'" Dr. Miga opined that there is a "need for increased vigilance for complications including close inspection of intravascular wires/laser fibers at the conclusion of the procedure." He further wrote, "It is my expert opinion that the standard of care was not met under multiple circumstances. First, the retention of the fiber ablation catheter and secondly the failure to respond to the patient's concerns in a timely manner resulting [in] prolonging pain and suffering."

The trial court determined that Dr. Miga's report was adequate to put Dr. Nambiar on notice of what care was required but not given. We disagree. "To adequately identify the standard of care, an expert report must set forth 'specific information about what the defendant should have done differently.'" *Abshire v. Christus Health Se. Tex.*, 563 S.W.3d 219, 223 (Tex. 2018) (per curiam) (quoting *Palacios*, 46 S.W.3d at 880). Stating that "retention of the fiber ablation catheter" did not meet the standard of care does not inform the defendant of what action or inaction the plaintiff has called into question. Similarly, stating that there was a "need for increased vigilance" does not reveal what Dr. Nambiar should have done differently.

A "fair summary" of the applicable standard of care and breach identifies the type of care expected but not rendered. *See Palacios*, 46 S.W.3d at 880. For example, an expert report sufficiently stated the standard of care for staff responsible for assessing, removing, and changing a patient's wound VAC device where the report explained that staff "should have discovered the presence of a foreign body in the left flank wound of the

5

patient and alerted physicians for appropriate treatment," "should have assessed [the patient] on a daily basis and [made] sure that no wound VAC device remain[ed] in this patient's hip for more than two days," and "should have properly cleaned the wound . . . and properly removed and/or replaced the wound VAC sponge device . . . ." *Health Care Unlimited, Inc. v. Villarreal*, No. 13-09-00456-CV, 2010 Tex. App. LEXIS 980, at *14–15 (Tex. App.—Corpus Christi Feb. 11, 2010, no pet.) (mem. op.). The report further explained that the "proper technique" for staff "involved thoroughly exploring the full extent of the wound at each removal and/or replacement," which would ensure that no foreign bodies were left in the patient's wound. *Id.* at *15. By explaining the specific tasks and responsibilities required, the report sufficiently set forth the standard of care. *Id.*; *see also Hood v. Kutcher*, No. 01-12-00363-CV, 2012 Tex. App. LEXIS 8120, at *2 (Tex. App.—Houston [1st Dist.] Sept. 27, 2012, no pet.) (mem. op.) (in case involving fragments of glass left in patient's wound, upholding expert report explaining standard of care required that wound be explored, prepared, and cleaned, including irrigation and debridement, if necessary, to detect foreign bodies).

In contrast, in *Agahi v. Flynt*, a case in which the plaintiff ingested orthodontic brackets that became dislodged following an orthodontic visit, the Third Court of Appeals found the expert report deficient because it failed to "specify the standard of care to which an orthodontist is held when positioning, adjusting, and activating orthodontic appliances—the actions that allegedly caused [the plaintiff's] injuries . . . ." No. 03-24-00835-CV, 2025 Tex. App. LEXIS 4546, at *12 (Tex. App.—Austin June 27, 2025, pet. denied) (mem. op.). Because the report did not provide specific information about what

6

the defendant should have done differently, it was found to constitute "no report" at all. *See id.* at *15–16.

The "fair summary" required in an expert report is "something less than a full statement" of the applicable standard of care, how it was breached, and how that breach caused the plaintiff's injury. *Spitzer v. Berry*, 247 S.W.3d 747, 750 (Tex. App.—Tyler 2008, pet. denied) (*citing Palacios*, 46 S.W.3d at 880). However, "if an expert report contains only conclusions about the statutory elements, the trial court has 'no discretion but to conclude . . . that the report does not represent a good-faith effort' to satisfy the statute." *Smith v. Wilson*, 368 S.W.3d 574, 577 (Tex. App.—Austin 2012, no pet.) (quoting *Palacios*, 46 S.W.3d at 880).

Dr. Miga's report does not identify what steps Dr. Nambiar should have taken but failed to take in his treatment of Pumphrey. Because Dr. Miga's report does not identify the standard of care applicable to Dr. Nambiar, it does not meet the minimum standards set forth in section 74.351. Consequently, we conclude that the trial court abused its discretion in denying Dr. Nambiar's motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(l). We sustain Dr. Nambiar's first issue.

Because issue one is dispositive, we need not address Dr. Nambiar's other arguments concerning the expert report or his challenge to Dr. Miga's qualifications. TEX. R. APP. P. 47.1.

**CONCLUSION**

We reverse the trial court's order denying Dr. Nambiar's motion to dismiss and render judgment dismissing Pumphrey's claims against Dr. Nambiar.


Judy C. Parker
Chief Justice

8